Opinion op the Court.
Josiah Pitts, being deeply indebted to sundry'individuals, conveyed his estate intrust, to three trustees,, for the use of his creditors, requiring them to share, rateably in the disposition thereof. Sundry of them obtained judgments and pursued their executions, re1 gardless of the provisions of the deed. Among the rest, he was indebted to John H. Jones, and to give him an equal advantage with the others, as Jones had not sued him, he divided the debt into sundry small notes, and confessed sundry judgments thereon, before a justice of the peace. Jones issued his executions, and levied them on two slaves in the possession of Matthews Wins ton Henry, the son-in-law of Pitts. Henry forbade the sale, and a jury was called to enquire into the right of property, who found it to be in Henry. Jones gave to the constable, M’Murtry, abond of indemnity,and the slaves were sold, and Robert P. Henry, a brother of Matthews Winston Henry, became the purchaser, and obtained from the constable the indulgence of a few days to pay the money. In this space of time, Matthews W. Henrv obtained an injunction restraining the constable from paying the money over to Jones, and immediately commenced an action of trespass against the *429 constable, for taking the slaves, and on the trial thereof recovered a verdict and judgment for the value of the slaves, which judgment was afterwards affirmed in this court, on the insufficiency of the plea.
On the recovery of this judgment, Robert P. Henry, who had never paid the purchase money to the cons(able, instead of doing so, paid the slaves which he had purchased to his brother, by an arrangement with the executors of the constable, who in the mean time had departed this life, and Matthews W. Henry gave to the said executors a credit on the judgment for'the amount of the slaves. Thus, whatever effect the execution and sale had on Jones’ executions, he got nothing, the executors conceiving themselves authorised to make this arrangement, because they held the bond of indemnity which Jones had given to their intestate. . Jones then brought this bill, in which he made the executors of the constable, Robert P. Henry, Matthews W. Henry and the heirs of Pitts, he having died in the mean time, parties, there being no administrator. Of the heirs he requires a discovery of estate in their hands, descended from their-ancestor, to satisfy his claims; of-Matthews W. Henry and Robert P. Henry he requires the whole trial at law tobe unravelled, and charges that the claim set up by M. W. Henry to the slaves is fraudulent and void against creditors, the negroes having been part of Pitts’ estate, and fraudulently conveyed to M. W. Henry, to save them for the family, and screen them from the grasp of the law; and alleging that there was a combination to defraud him out of his just debt, by M. W. Henry, R. P. Henry and the executors of the constable, and prays that the conveyance and judgment may be set aside, the money paid to him, and his bond of indemnity delivered up; and he averred that there was other estate held by M. W. Henry in the same manner, and required the claim to be set aside, and his debt to be satisfied by a sale thereof.
The heirs of Pitts deny any assets. M’Murtry’s executors, R. P. Henry and M. W. Henry insist that the trial at law is conclusive against Jones as to title, and insist upon a right to make the arrangement which they had concluded, without his leave. M. W. Henry-insists that his claim is fair to the estate derived from Pitts, and founded on a valuable consideration, and ought not to be disturbed.
Where a court of'law* can get hoid of the whole matter, it is as competent to try a question of fraud as a court of equity; and, in such caso, the matter cannot be retried in chancery.'
If there isa failure of an investigation of the matter at lanq from the defective pleading of the defendant, he is, nevertheless, barred by the judgment from a resort to equity, if, by properly pleading the matter so im properly plead, the whole merits ofthe case could have been tried at law.
Where a plaintiff undertakes to indemnify an officer for selling property taken under his execution, the judgment in a suit against the officer for so doing, is conclusive on him, unless it shall appear, that he had no notice of the suit,1 or that the judgment was obtained by collusion.
*430 J. The court dismissed the hill of Jones with costs, and from that decree he has appealed. The first question here presented, is, whether the verdict and judgment at "law between M. W. Henry and the constable, whom Jones had indemnified, is conclusive between Jones and M. W. Henry, or is Jones at liberty, in the attitude he stands, again to re-try the matter?
Although it is one'of the grounds of jurisdiction in equity, to examine into and try fraud, yet ¿ court of law is as competent, frequently, to try fraud, as a court of chancery; and wherever a court of law can get hold of the whole matter, it is as much bound to notice it, and the party there impleaded .is as much bound to make the fraud there appear, as he is in a court of equity. And there can he no doubt, that the constable, or those who defended him, was as much bound to impeach the claim of M. W. Henry, on the score of fraud, as he would have been in any other court, and if he failed to do so, he would be forever afterwards precluded from asserting it, and there the judgment between M. W.. Henry and the constable is certainly conclusive. It is true; the? cause, in this court, was decided on-the insufficiency of the plea. This, however, can make no important difference on this point; for as the constable had the opportunity of putting in a valid defence, which would admit of the proof of fraud, and was hound to make it; and having failed to do so, he must take the consequences.
2. This rule, however, which gives to verdicts and judgments, where a matter might and ought to have been tried, a conclusive and binding effect generally, applies only to the parties thereto and privies, hut not to strangers, who are unaffected. Is Jones, then, in this case, so much a quasi party as to he affected by it, or can he claim the attitude of a stranger, and is it as to him res inter alios acta ? The case of one who indemnifies, must be different from that of a stranger. The meaning of the undertaking is, that he will undertake for the officer, to pay all that shall he recovered for the act against the consequences of which the officer is indemnified, and thus the obligor stipulates to become party, and to be hound by all legal proceedings against, the officer; and to avoid.the effect of this stipulation', it would be incumbent upon bim to show that theré was some fraud or collusion in obtaining the recovery, *431 or at ail events, that he had no notice of it.- Here, it is not pretended that Jones had no notice of the action against the constable; but, on the contrary, it is even impliedly, if not expressly admitted by his bill, that he conducted the defence and the appeal thereon, and was unfortunate on account of a defective plea. Under these circumstances, the case forms an exception to the general rule, and the record is not Onty evidence, but must be taken as conclusive. On this principle, Pothier, in his Treatise on Obligations, has said, that the case of principal and surety forms an exception to the case of res inter alios acta; 'and in the case Blasdale vs. Babcock, 1 John. 517, it was held, that the record of a recovery of a chattel against the vendee, wqg evidence in an action against the vender, on the implied warranty of title, where the yender had notice of the first action. In the case of Kip vs. Bigham, 6 John. 158 and 7 John; 168, it was held, that the record.of a recovery against a sheriff, for an escape of a prisoner from the jail liberties, was conclusive evidence against the sureties of the prisoner, who had stipulated with the sheriff that the prisoner should remain within the liberties, when they had notice of, and were required to defend the sheriff. This case, in principle, is in point, if not a stronger case than the present; and although that .decision is not obligatory upon us, yet it is entitled to respect, and is so consonant with reason, that we have no hesitation to adopt it. Jones, then, cannot re-investigate this verdict and judgment; and as to the title of these two slaves, his claim as creditor is quieted, and he can have no relief as to them!
A recovery against an officer for selling property, alleged by the plaintiff to be the property of the defendant, but claimed by a third person, is conclusive of the right of such third perspn a-gainsl the plaintiff, as to that identical property only. The plaintiffmay, by bill in chancey, contest the right to other property claimed under the very same title.'
But another question presents itself. Matthews W. Henry was married to the daughter of Pitts, on the 18th of March 1813, at which time Pitts was deeply involved in debt. A writing was given to him by Pitts, granting the two slaves sold by the constable, and also two others, and sundry articles of personal estate. This instrument is not sealed, and bears date on the day of the marriage, and is the same set up by Henry in the action of trespass, on which he recovered the slaves, and is to the following effect:
“ In consequence of a marriage contract between Matthews Winston Henry and my daughter Juliet, I give to him and his heirs forever, the following negroes and property: Say, Damsel and child called Bill, *432 Charlotte and John, known by the son of Lisa; two good feather-beds and furniture, a yoke of oxen, and as much land as I gave Robert P. Henry, to the same amount, as soon as I can make it convenient; and, in every sense of the word, equal to the same I gave the said Robert; and also, a piano forte. Witness my hand, this 18th March 1813.
Whore a' plaintiff indemnifies the officer and has property sold under an execution, to the amount of his judgment, and the execution satisfied, his judgment is extinguished, consequently, if a third person recovers .against the officer whom he has indemnified, the plaintiff has no remedy at law against the estate of his debtor; his relief is in equity.
Teste, (Signed) JOSIAH PITTS.” John D. CraigJ’
3. Jones issued Ids execution on the 16th day of June ■1813, and on the 25th of the same month 'this writing was acknowledged by Pitts and recorded in the clerk’s, office of the county where the parties resided. The furtt^gy question alluded to, is, if the verdict and judgment in the action of trespass are to he taken as conclusive against Jones, as to the two slaves recovered thereby and sold under his executions, must it also be considered as barring his right or claim as to the remaining slaves and other things contained in said waiting? This question, we conceive, must be answered in the negative. It is true, the rule is, as above suggested, that a verdict and judgment in a former action upon the same matter directly in question, is evidence for or against privies in blood, 'privies in estate, and privies in law; yet the rule is confined to the same matter, between the same parties,, or rather the same point; and when the inquiry is, how far th'fe same subject matter of the suit is affected, the rule is* that the former recovery can be final only for its own proper purposes and object, with reference to the subject matter of the suit, and upon the points there put in issue and directly determined. The title, then, to the remaining slaves and personal estate, in this case, is left open, and may he enquired into. There is no issue found against him on the point. It is, however, contended, that the bill of Jones, in this instance, cannot be sustained for tbis purpose, because he has an adequate remedy at law; and this same question seems to have been made in the court below, by a demurrer to the bill. We,-however, conceive that his bill makes out a case proper for tbe jurisdiction of a court of equity, which will often interfere to remove incumbrances on estates, and especially those which are fraudulent, and uncover them to the process at law, or subject them to the demand at once. The same court, after every process known to the law *433 has been tried in vain, will interfere to subject to the debt, in some instances, what the law cannot reach. Here, the appellant attacks this claim as a fraudulent disposition; and also, it is stated in the bill and admitted in the answer, not only that he has pursued his claims by fieri facias, but also by a capias ad satisfacimv-dum, without effect, which justified this application to the chancellor. An additional circumstance evinces his right. His executions, under which the two slaves have been already sold, have been discharged by the return of the officer, and he is not entitled to further execution at law. But is the sum for which the slaves sold discharged, and has he no claim therefor against the estate of Pitts? We conceive he has, and that as his means of recovering it are gone at law, by the return of the executions, his application to a court of equity for relief is proper.
In order to protect prop-th/claims od creditors by an agreement 00>}-marriage, it is indispensable °£?" ^executed before the marriage.,
Therecitalm a deed of gift made in con-^d®rr^°noi" p^i'se be-foremar-riage, is, it seems, no ev-id^"st acred-ftor, of the existence of or°ifevidence at’all, it may be rebutted s¿ancesUm" 0 '
*433 4. The remaining question, then, is, is the claim of M. W. Henry to the remaining slaves and personal estate, such as’ought to yield to the claims of creditors? it is charged in the bill and admitted in the answer, that this Writing from Pitts was not written or signed until after the marriage, and that it was antedated: but at what time it was made is wholly uncertain. It might have been just before the acknowledgment; for this is the first certain proof of its existence. So far as slaves are conveyed by it, if they were given, according to the decisions of this court in the cases of Scott vs. Patterson and Taylor vs. Eubank, they could not be protected from the claims of creditors, in this country, under the statutes regulating slaves, even if possession followed the gift, within a shorter period than three years, although they might be given to a child j ust commencing life, it becomes, then, important to ascertain whether there was such consideration as is deemed valuable in law, so as to make it a transfer for a valuable consideration, and not a gift.
It is alleged in the answer of M. W. Henry, that some time before his marriage he had understood from his brother, Robert P. Henry, who married another daughter, that Pitts, on the marriage of Juliet, intended to give her as large a portion as he had already given to the wife of Robert P. Henry; that Pitts after-wards, and before the marriage, expressed the same to him; that accordingly, the morning after the marriage, *434 Pitts called up 'the slaves, and pointed out by name those intended to fulfil the contract; that he, M. W. Henry, did not immediately go to house-keeping, and some time afterwards the writing now in contest was signed, and on some convenient occasion, when the sub-scribing witness came in, he was requested to attest it. But of all these allegations there is no proof in the cause, nor is there any evidence of it, except what ^le ^ace ^le instrument furnishes; which expresses that it is in consequence of a marriage contract between M. W. Henry and his intended wife. There is some doubt, whether these expressions, as they express literally no contract between the grantor and grantee, pre-viou-s''to the marriage, and do not determine when the contract was made, or whether it was a marriage agreed upon or a marriage executed,' could give to this instrument the claims of even a settlement made after marriage, in consequence of a previous engagement; and it is an indispensable requisite, to protect such settlements from creditors, that the agreement should have been made before the marriage. But without giving this writing that construction, and supposing that it intended to express a contract previous to the marriage, still we apprehend there is an insuperable difficulty in sustaining it. It is true, cases can be found, where marriage settlements, made after marriage, in consequence of a verbal agreement existing previous to the marriage, have been held good. Without determining whether these cases can or cannot be supported upon principle, we are satisfied that none can be supported, without there was clear proof that the contract or verbal agreement existed before the marriage; and we apprehend that none ought to be supported, where the only proof of such previous verbal agreement rests on the expressions of the written agreement. A more secure covering for fraud, and a more ready Way to sustain all settlements or marriage agreements made after marriage, could not be invented. It is not necessary for us now to determine that such recital of the verbal agreement, contained in the written instrument, proves nothing. If it is evidence at all, to prove the existence of a prior verbal agreement, it must be of a weak character, as it is a matter fixed entirely between grantor and grantee, to which the creditor was neither party nor privy, and over which he had no control. It is lia *435 ble, then, to be rebutted by other circumstances. Here, the parent was deeply indebted, not only to the appellant, but to others; and judgments were obtained: against him, and his fortune desperate. This presented to him a powerful temptation to save something from the wreck, and carve out a provision for his family, especially for the one lately married; and thus to be generous, before he was just. An equal temptation was presented to the young persons, to catch at something, to keep up their former expectations. No formal agreement with the son-in-law, calculated to induce the marriágfe, which otherwise might have been doubtful, is shown. A subsequent writing is made and- antedated, and it is acknowledged, that it may be recorded at the moment when the property was- at least near the grasp of the law. Such circumstances, furnish inferences which countervail the evidence furnished by the-writing, and are sufficient to destroy this disposition of the estate, as voluntary and unavailing against- the appellant as a creditor, and the appellant is entitled to relief.
The plaintiff inan <rcec’’" indemnified'13 an officer for selling prop-™vednatto have.beenthe property of £ut ofá vendee from him,;is enti-hisdebtorthe amount due tohim on his '|,utSff the’ju-. ry shall have given exem-ges"against* the officer, or by any means, ““ re" against him, exceeds the. amount of what wasdue plaintiff in th'e-execution must lose the Where nron-ertj, liable to the olaipis of been trans-aS ferredtothe children of eTiit°bwill decree atthe suit of the creditors, a specific property, if it can be had, and if children" who received it shall nay its pelí0 own os-tato.
*435 5. The bond of indemnity given to the constable, in the hands of his executors, is entitled to credit for the sum'which was given them as a ci'edit for the price of the slaves, and the appellant must be subject to the residue recovered in the action of trespass, and cannot again touch the two negroes sold under his executions, for which a recovery is had. But the sum for which his executions were extinguished by the said sale, he is-entitled to recover, as well as any other balance due on-his several executions; andan account must be taken' of all the property or estate included in said writing frorn Pitts to M. W. Henry, the two negroes formerly sold under execution excepted, and it must be subjected to sale in discharge of the said debts of the appel-iant, if it can be had in kind; but if not, an assessment thereof must be made, and M. W. Henry must be subjected to pay the value thereof, or such part as cannot 'be had. '
6. In- the decree which we have directed, we have said that Jones is to recover,, not only the balance of his judgments, but also that sum which-Gonstitutes the price of the slaves sold, for which the constable, by his return, has extinguished his legal remedy. It is not without some hesitation, that we have done this, and:the pro *436 priety of it is worthy of discussion; for it may be plans-. ibly contended, that as Jones, by his negligence or unskilful defence at law, has lost the fund which ho once had gained, and which was subject to his executions, pe ought not to be permitted again to return upon Pitts’ estate, and take another hold upon it. We have considered the action at law, which has been tried bc-tween M. W. Henry and the constable, substantially as. an acti°n between Henry and Jones; and the case may he rendered more simple, by casting away heirs and privies, and considering the whole transaction existing between three parties, Pitts, still supposed to be»-living, Heun¡_and Jones. As between Henry and Jones, the veraroí and judgment at law is conclusive, by the mis-management-'°í Jones. Although there is no issue found expressly against Jones, yet the recovery is a bar to reiifvestigation, and the two slaves recovered thereby-are protected. But as between Jones and Pitts, the recovery can have no such conclusive effect. As it is no evidence against Pitts, who was not a party, so it cannot preclude him from saying that the two slaves alrea-sold were liable; and that Jones, having satisfied-so much of his demand out of a fund already liable, he has no right to another grasp on his estate by the same ex-^nguisbed demand, or any estate once his, which may be deemed subject to the execution. This, we confess, is not without force, and we have met with some difficulty in not giving it an eifept which would preclude J ones from recovering again the price of the slaves sold. ^ execution of Jones had been levied on the estate of a stranger to Pitts, or on property confessedly belonging to another, and therefore not liable, and Jones had eRbcr the property or its price, and his executions were extinguished by the return, there could he no valid objection to relieving him in equity against the ef-^ec^s °f that return. On the contrary, had he levied on the estate of Pitts, as he did in substance, and had lost either the estate levied on, or its price, both as to Pitts an<t himself, by unskilful management, it is clear, that be ought not to be relieved by a second recovery of the amount against Pitts. This conclusion may seem to preclude him in this instance; hut when it is considered, that if Pitts himself, in the case last supposed, had regained the estate so taken, the result ought tobe widely different, and in that case he ought still to pay the *437 debt; so, in this case, he has substantially regained the estate; for Henry, b,is vendee or transferee, has gotten it, and the estate remains according to Pitts’ own disposition, and held under him. Here, the estate, as to, Jones the credito.r, belonged to Pitts; as to almost all the world beside, it belonged to Henry, who claimed under Pitts. Jones has seized and sold it, and by un-skilfully defending against the claim of Pitts, held by Henry, has lost the proceeds. As this recovery has been by Pitts’ vendee, and has inured to the benefit of the title derived from, and held under-him, we conceive that the result ought to be different; andas Pitts himself, or his title, has regained the slaves, or their price, we think it contrary to equity and good consciedaa' for him to hold the money, and his assignee the estate. We have, therefore, come to the conclusion, that Pitts’ estate ought to be again charged with the price at which the slaves sold, at the sale' made by the constable, and that the chancellor will relieve from the effects of the returns on the executions — not by setting aside the returns, but by giving a decree for the amount. It would be paying the debt of Pitts, by the default • of Jones, and charging Jones too high a price for that default, to. debar him of the recovery of this debt. He will iose the difference between the price for which the slaves sold and the judgment at law, and will lose forever the opportunity of touching the two slaves once sold by execution. That fund must rest secure in the hands of Pitts’ vendee, and no money for the sale of these slaves is received by Jones to off-set these losses; and to add to this, the loss of the debt, equal to the price of the slaves, would not be equitable.
A judgment agaijpst an oiheer for^ seHing the property of a third person execution Ts no evidence, as betvveen andPdefen-ff <lant in the execution, noflhe^re - erty oVXP defendant,
*437 A majority of the court, therefore, Judge Owsley; dissenting on this point, are of opinion that this item’ must he charged in favor of Jones against the estate of Pitts.
The decree must, therefore, he reversed with costs, and the cause remanded, with directions for such pro-» c-qedings and decree as are accordant with this opinion.