KINNARD, &c.
vs.
DANIEL, &c.

---

CHANCERY.

Case 34.

January 14.

Kinnard, &c. *vs.* Daniel, &c.

APPEAL FROM BOYLE CIRCUIT.

Judge CRENSHAW delivered the opinion of the court.

1. A settlement made after marriage, in pursuance of articles made or letters written before marriage, is valid, even against creditors or purchasers—marriage being a valuable consideration. (*Roper on Prop.* 303.)

2. Do the words of the statute, in regard to covenants or agreements in consideration of marriage, (1 *Statute Law,* 439,) require that letters written before marriage promising a settlement after marriage, be recorded, to support a settlement made in pursuance thereof? Or does it apply to writings which vest or settle the property?

3. To support a settlement made after marriage, in pursuance of promises contained in letters purporting to be written before marriage, in a contest with creditors of the grantor, proof should be adduced to show that the letters bear their true date, or that they were received before the marriage.

4. All parties interested in a suit to invalidate a settlement made in consideration of marriage, should be before the court.

On the third day of December, 1846, Abner G. Daniel, being largely indebted beyond his means of payment, purchased from James A. Fisher a house and lot in the town of Danville, and procured Fisher to convey the same to George W. Dunlap in trust for Mrs. Elizabeth Daniel, wife of said Abner G., during her life, remainder to her children, Abner G. Daniel, the second, Robert O., Mary L., and Alexander C. Daniel, and such other children as she might have by the said Abner G., her husband. The consideration, recited in the deed, for its being made to Dunlap in trust as aforesaid, is, that the said Abner G. Daniel was under obligations to his wife, by an ante-nuptial agreement, to make provision for her and the *children of the marriage*, as an equivalent for the property and money of the wife to which he became entitled by the intermarriage. The consideration paid to Fisher for the house and lot is alleged to have been $5,000 in goods.

Kinnard and others, by their five several suits, which were consolidated in the circuit court, seek to set aside this deed of conveyance to Dunlap, upon the ground of fraud, and to have the house and lot sold in satisfaction of demands against A. G. Daniel, set up in their respective bills, and which originated previously to the making of said conveyance. Dunlap, Abner G. Daniel and his wife, and her children by said intermarriage, as she alleges, are made defendants. They answer denying fraud; and Mrs. Daniel exhibits and relies upon two letters addressed to her before the marriage, as she alleges, containing, as

she insists, a promise and obligation on the part of Daniel to make a provision for her and her children; and it is insisted that the conveyance to her use for life, remainder to her children, was intended to be a compliance with the ante-nuptial agreement manifested by these letters.

Anterior to the marriage between Daniel and his wife, she was a Mrs. Jennings, widow of John Jennings, deceased, and was the mother of four living children by Jennings. Jennings was the owner of a considerable estate, which appears all to have been sold by his executors, and to have been paid over to Daniel, in his capacity of husband of the late Mrs. Jennings, and in his capacity of guardian for her children. It is alleged that, by the will of John Jennings, deceased, his property, in the event of his widow's second marriage, was to be divided, his widow taking one third, and his children two thirds. But the will is not produced, and the disposition made by Jennings of his property does not otherwise appear than by mere allegation. We think it probable, however, that he made the disposition of his property which it is alleged he did.

The marriage between Daniel and wife took place in May, 1835. The first letter upon which Mrs. Daniel relies, as containing an obligation on her husband to make some provision for her, bears date in March, 1835, and so much of it only as bears upon this controversy will be quoted, which is as follows:

"I also stated to you that it was your person, and not your property, that had induced me to love, and that I was willing to marry you without property; that you might make it in trust to your children. I have plenty for us both—my children are raised and educated. I say in this letter, and it may be evidence against me, that there is nothing in this life, that is in my power to do, to make you and your children happy, but what I will do it."

The second letter is dated in April, 1835, and so much of that, also, will be quoted, as has a bearing

upon the controversy. Alluding to a previous conversation, he says :

"I then said to you what I still say, that it was not your property that I desired, but it was your person, and that I desired you for a companion, and, in order to convince you of that fact, as we have children both to provide for, I am willing to settle upon you, at any time you may require it of me, as much property or money as I may receive of you by marriage; and I will do so, as I think it will be my duty, and you can hold this letter, if you see proper, to compel me if we get married."

The first and main question for consideration is, whether the deed of conveyance to Dunlap in trust is invalid as against creditors. The deed was acknowledged and deposited for record on the day after its date—this was in due time, and done before the institution of the suits of the complainants. If, therefore, the deed as to Mrs. Daniel and children was not voluntary, but based upon a valid and valuable consideration, and is without fraud on the part of the grantee or his *cestui que trusts*, it is good against creditors, and must prevail in this controversy; and there is no pretense for saying, as we think, from anything in the record, that there was any fraud either upon the part of the trustee or the *cestui que trusts*, whatever may be said in regard to Abner G. Daniel. But, was there any valuable consideration for the deed as to Mrs. Daniel and her children? The two letters from Daniel to his wife, if written at the time they bear date, which was before the marriage, contain a promise, in consideration of the marriage, to settle upon his then intended wife and children, as "much property or money," as he might receive by her in virtue of the marriage; and this written promise is sufficient to uphold the deed, to the extent of the money and property acquired by Daniel through his wife in consequence of the marriage, against creditors, unless this promise to make a settlement upon his wife is such an agreement on his part as must, according to

1. A settlement made after marriage, in pursuance of articles made or letters written before marriage, is valid, even against creditors or purchasers—marriage being a valuable consideration. (*Roper on Prop.* 303.)

KINNARD, &c.
vs.
DANIEL, &c.

the act of the legislature, (1 *Stat. Laws*, 439,) be ac-knowledged and deposited for record in the proper office within eight months from the date thereof. The doctrine is laid down in *Roper on Property, vol.* 1, *p.* 303, that "settlements made after, but in pursuance of written articles entered into, or letters written *before* the marriage, such settlement is unimpeachable by any persons, whether they be creditors, or subsequent purchasers;" "for," says the author, "the contract of marriage is a valuable consideration, and establishes the settlement against every one." There can be no doubt, therefore, that the promise contained in the letters, incorporated in the record in this case, if they bear their true date, and were in truth written before the marriage, constitute a sufficient consideration to sustain the deed, to the extent at least of the means obtained by virtue of the inter-marriage, unless it be required by our statute that the letters should have been recorded.

2. Do the words of the statute, in regard to covenants or agreements in consideration of marriage, (1 *Statute Law,* 439,) require that letters written before marriage promising a settlement after marriage, be recorded, to support a settlement made in pursuance thereof? Or does it apply to writings which vest or settle the property?

The words of the statute are sufficiently broad and comprehensive, to embrace such a promise or agreement as that contained in the letters to Mrs. Daniel. The words of the statute are, "no covenant or agreement, made in consideration of marriage, shall be good against creditors, &c., unless the same covenant, or agreement, be acknowledged, &c., and be lodged with the clerk for record." But although the language of the statute, literally, includes such an agreement as that contained in the letters referred to, we are not satisfied, and do not decide, (as it is not necessary to do so, as the decree will have to be reversed upon other grounds,) whether the statute was intended to embrace such an agreement or not. It may be that the statute was designed to apply to agreements only which, by their terms, should vest or settle property on the beneficiary; and not to agreements, by which nothing, in fact, should be vested or settled, but containing a promise only, to make a settlement in future. But, as already remarked, we do not decide whether the agreement under con-

sideration comes within the spirit, as it does within the letter, of the statute, or not.

Although the letters, produced by Mrs. Daniel, bear date before the marriage, we are clearly of opinion that it should not be assumed that they bear the true date, without proof. There was no evidence produced in the circuit court that they were in truth written by Daniel and received by his wife before the marriage. It is so easy to manufacture such letters to suit emergencies, that, to make them, without any proof that they were written and received before the marriage, a valid basis for the deed of trust to Dunlap, would be to establish a very dangerous precedent. This deed having been made whilst Daniel was in extreme embarrassment, indebted many thousands of dollars above his means of payment, it is indispensable that there should have been a valuable consideration therefor; and to constitute the agreement relied upon a valuable consideration, it must have been made before the marriage, and that fact ought to be manifested by proof. In regard to antenuptial agreements, unsustained by proof, the court in the case of *Jones* v. *Henry, &c.* 3 *Littell*, 433, remark, that "a more secure covering for fraud, and a more ready way to sustain all settlements or marriage agreements, made after marriage, could not be invented." There having been no evidence in regard to the time when the letters which contain the agreement in this case were written—no proof to show that it was before the marriage—the decree of the circuit court will have to be reversed.

The letters, when taken together, show that not only Mrs. Daniel was to be the object of a future settlement, to the extent of the money and property derived through her, but that her children, also, were to be beneficiaries; and her children by Jennings were those then in the contemplation of the parties, as we suppose; but the agreement we think is sufficiently comprehensive to include all her children by both marriages. The children by the late marriage only,

KINNARD, &c.
*vs.*
DANIEL, &c.

3. To support a settlement made after marriage, in pursuance of provisions contained in letters purporting to be written before marriage, in a contest with creditors of the grantor, proof should be adduced to show that the letters bear their true date, or that they were received before the marriage.

4. All parties interested in a suit to invalidate a settlement made in consideration of marriage, should be before the court.

are made beneficiaries in the deed of trust to Dunlap; and it appears to us that the children by Jennings being embraced by the promise, ought to have been embraced by the deed, and that they have such an interest in the subject of the controversy as to render them necessary parties. They ought, therefore, to be brought before the court, upon the return of the cause, in order that the court, upon a final hearing, may take such steps as will secure to them, if they desire it, an equal interest in the property in contest with the children of the second marriage, if the deed of trust should prevail against the complainants. And the court should ascertain, in some proper mode, the amount of money or property acquired by Daniel through his wife, as she was only entitled, at any rate, to a settlement to that extent—the property settled upon her may amount to more; if so, the complainants will be entitled to the excess, even should the deed of trust prevail.

Wherefore the decree is reversed, and the cause remanded for further proceedings consistent with the principles of this opinion.

*Harlan*, for appellants; *Dunlap*, for appellees.