*49 Opinion of the Court,
by Judge Mills.
THE complainant in the court below, now defendant in error, presented his bill, alleging that Juba Moore had sold him a house, unfinished, and had entered into articles of agreement, or executed a written instrument, engaging to have the house finished, and specifying what was to be done thereto, and to surrender possession of it; that the possession was surrendered, but nothing was done towards the completion of the house; that Moore had left the commonwealth with an intention of never returning, as the plaintiff believed, and was engaged in the South American armies; that he had left a few slaves, and a number of articles of personal estate, specified in the bill, in the possession of his wife, who still held them; and, also, a certain David Gibson professed to be the agent of said Moore, and to control his property. He prays that the said Gibson and the wife of said Moore, whom he made may be restrained from disposing of said estate, and that on his giving bond and security, it might be ered over to him, or placed in the hands of a receiver, until the final decree, unless the defendants or some of them, would give bond and security to have the estate forthcoming, to answer the decree of the court; that the demand might be liquidated and a decree entered for the amount, to be satisfied out of the effects attached,
Against Moore, publication was made. The sheriff took some of the estate specified in the bill, and the fendants having failed to give bond and security, it was delivered over to the complainant, he having given bond. At the first term to which the publication was returned, the court below, by an interlocutory order, empannelled a jury to enquire into the damages sustained by the complainant for non-performance of this enant, and they found the sum of one thousand dollars, and at the next term, the court decreed the amount thereof to be satisfied by the sale of the articles attached. But pending the suit and before this decree, the complainant discontinued the suit, both as to Gibson, the ¡agent, and the wife of Moore, who.had been made *50 ties as garnishees. To reverse this decree, Moore has prosecuted this writ of error.
The claim being unliquid a ted, it s°otl that the com! plainant has not charged a sum certain, as being due.
Tbe resident failingqí give security for the forth°°opertyf iT may be delivered over to the comAmustíe-' count for the thítfmeit Ts sol°d.ime 1
s'10'? profits ascertained 6 by the jury,
. finald altho,1S the ooramissioner apmake* 'Lie* of the property may not have reported-An agent, & ¿¡eftn°f dant) as gar. nishees or £?ssesrs°rs shouhl^be y’ made parties,
*50 It is now contended that the cause of complaint is purely legal, and that the complainant is not entitled to ^medy in equity. It must be confessed that the demand is purely legal, and .would properly support an action at law, and, according to the usual mode, a bill in e1uity C0UM not be sustained thereon. But it does not from thence follow, that the bill cannot be supported; for no action at law, in the usual course of the common could be sustained, for the want of service of process upon Moore. And the legislature, by allowing Parties to proceed against absent defendants in equity, for any debts or demands against them, must have intended to supply this defect of legal remedy, and where there were effects belonging to such absentees, in the state, to permit the complaining parties to sue in a court of equity, and proceed in rem, whether their demands were legal or equitable. Hence, if the situation of the defendant comes within the act, it has been held a good excuse for bringing a legal demand into a court of equity. The objection urged against this, is, that at common if a return of non est inventus is made, a statute authorises an attachment at law, and that the complainant jn this case ought to have resorted to that method. ^ maY answered, that to warrant such a return at law, the defendant must have a known and usual place of residence, or be commomnt in the county, and yave n0 ]inown place of residence, as was held by this court in the case qf Sneed vs. Weister. &c. 2 Marsh. 277, and in subsequent cases; and it does not appear that *^le defendant here had such known and usual place, immediately before his departure, or that he now belongs to the county, but the contrary. Besides, our act of assembiy which permits such proceedings, 1 Dig. L. K. 58, expressly applies the proceeding to cases not only where defendants are out of the country; but where, upon inquiry at their usual places, they cannot he found, s0 as sened with process; thus, expressly including cases which might come within the act regulating the proceedings at common law, and thereby allowing the chancellor concurrent authority, in some of the cases, with a court of law. As the defendant below, in this case, was shown not only to be out of the country, but to have abandoned it, and to have effects in it in pos *51 session of others, we conceive that the plaintiff was authorised to bring his demand before a court of equity.
j^'^g a 0f her husband, or proteoth^ "*an‘ gfty in hi'sabsence.
qU;tyUhas°not jurisdiction suoh case, dent here, is indebted to \he defenpossession of his estate.
guoll dent°gar-eS1" nishees are first made plainant then "ets Posses-estate, and dismisses his reshient^de*56 fendants, his bill must be dismissed ab-u e
It is insisted that it was error in the court below, to make an interlocutory order, and assess the damages by a jury, at the term to which the order of publication was returned. To this the case of Duly vs. Bedford, 1 Marsh. 222, is a sufficient answer.
It. is objected that there is no testimony apparent in the record, showing the amount of damages sustained, and no order permitting parol evidence to be introduced, and, therefore, there is nothing to support the verdict. It is true, that it is the general mode of proof in a court of equity, that the testimony shall be reduced to writing; but it does not follow, that written evidence alone shall be used on an inquiry of damages or an issue of fact, submitted by the chancellor to the finding of a jury. It is true, the application of the general practice to such cases, has been intimated by this court, in the case of Owens vs. Owens, Hard. 154; but the contrary practice is adopted in the case of Reading vs. Ford's administrator and heirs, 1 Bibb 338. . In choosingin between these two cases, we have no hesitation in preferring the latter, as most conformable to principle. It is by statutory provisions and the combination of the powers of the chancellor and those of the common law judge in the same persons, that the practice of empannelling juries in chancery has been introduced, Under different circumstances, the chancellor could have one summoned; but must send the case to a court of law, there to be tried on a feigned issue. In transmitting the cause to the common law tribunal, the chancellor directed how the issue should be formed, and what should or should not be relied on, on each side, as cause of action or defence, and sometimes what evidence should be used, especially that part of the chaneery papers which he deemed proper and pertinent. If the evidence to be used on such issues was not restricted by the directions of the chancellor, the case was left at large as other trials at law, and oral testimony, or such as belongs to a court of law, could be there used, When our practice, then, of calling juries at the bar of the chancellor, is assimilated to these proceedings, which it is substituted, and tested by them, it will clearly follow, that the testimony of witnesses viva voce, may be used, except where the chancellor has directed to *52 the contrary; add when the finding of the jury is not supported by the written evidence on file, the presumption is fair, that parol evidence was introduced, and that presumption must stand until the contrary appears. The introduction of such evidence before the jury, was, in this case, a matter of course, and the party was entitled to use it, unless the chancellor had expressly restrained it, which he has not done. There is more doubt whether the written evidence on file could be used without express directions, than there is that parol evidence could.
It is further insisted that the amount found by the jury is greater than that claimed in the bill, and therefore the verdict ought not to have been allowed to stand. To this it may be answered, that the bill does not fix the exact amount; but, on the contrary, alleges its uncertainty, and declares it- cannot be less than a certain sum, without suggesting that it is no more. This is only a conscientious and prudent mode of stating what was unliquidated and unknown, and ought not to bind the complainant to the sum suggested, as the statement of damages in a declaration at law, especially as it was not practicable to ascertain the true amount, and he was not bound to swear to too much, for the purpose of obtaining enough.
It is also contended, that as there was one slave taken by the sheriff and delivered over to the complainant, with whom the slave remained while the suit was pending, the court ought to have ascertained the hire of this slave and set it off against the amount decreed. This exception is well taken. As the complainant, by taking the slave into his own possession under the statute, became his own receiver, he ought to account for the profits up to the time the slave is disposed of. It is said, in reply to this, that it does not appear that the slave-is such an one, as that his hire would be of any value. To this we reply, that the presumption is otherwise; and it was the duty of the court to ascertain and determine that matter. It is said that the complainant can give the credit on the coming in of the report of the sale. We answer, this would be permitting the complainant to assess the hire himself, and leaving him at liberty to give the credit or not. It is also said, that the court could do this on the coming in of the report, and that the decree is interlocutory only, and, therefore, *53 the writ of error’ will not lie. In reply, we view this decree as final, settling the whole controversy as well as the costs, and all the court hereafter can do, is, to effectuate it by decretal orders. It is no more interlocutory, because an order has issued to a commissioner, directing him to execute it, and to report his proceedings, than if an execution for the amount had gone to the sheriff, and he had not returned it.
It is also assigned as error, that the complainant below erred in discontinuing his bill before the decree, both as to the agent' and*wife Of the defendant, and, therefore, he was entitled to no decree against the principal. This assignment is well founded. The agent who had the control of the estate, was the representative of the defendant, and therefore, a proper party. It is urged that he is not positively charged to be agent; but the bill states, that he professes to be so, and his answer would have determined this matter. If he showed hiipself agent, he ought to have been heard in behalf of himself and principal. If he denied the agency, it would then have appeared, that he was an improper party, and he might hav.e been dismissed without prejudice to the suit; but as the record now stands, he is the professed agent, and is prevented from being heard, because he is no party. The dismission, as to him, was, therefore, a mismanagement of the suit. Nor is the discontinuance as to the wife, in a better situation. It could not be right for the complainant, so soon as he succeeded in getting hold of the effects, to dismiss the garnishees or possessors of the property. It is urged that the wife was not properly made a defendant to such a controversy. It is true, the wife was not subject to a suit on the contract of her husband; but she may be the agent of her husband, and as such, she may not only keep, but manage and protect his property in his absence; and we are aware, that such agency, custody and preservation of his property in his absence, are not unusual in this country. She is charged to be in possession of this estate, and those in possession, are expressly required to be made defendants, by the act regulating this proceeding. As such, in her representative character, and in right of her husband, she might be made a defendant and be heard, although she had no legal interest, and in this instance, she was properly made a party, and discontinuing the suit, as to her, was irnprop *54 er. Indeed, by discontinuing the suit against both the wife and agent of the principal defendant, the right of the plaintiff to proceed any further, was destroyed; for, by the act of assembly which governs and authorises these proceedings, it is only in cases where others, holding possession of the estate of absentees, or. owing them debts, resident here, are or can be made defendants, that a complaining party is authorised to proceed. Such a state of case is necessary to give the chancellor jurisdiction. The court below ought, therefore, on the discontinuance, thus far to have dismissed the bill.
Some difficulty occurs as to what ought to be done with the cause now. It has been usual with this court, when suits are reversed for want of proper parties, to send them back wsth directions to permit such parties to be made, and the present defendant in error may claim the same indulgence; but his case is different from those where proper parties are omitted. He has made them as essential to the existence of his suit, and then has dismissed them, and thereby destroyed the suit. We, therefore, conceive that this bill must now be dismissed.
The decree must, therefore, be reversed with costs, and the cause be remanded, with directions to the court below to dismiss the bill without prejudice to any other suit for the same cause of complaint.