T. & J. Kirkman, et al. v. Vanlier.

~~~~~~~~~~~~~~~~~

| 7 | 217 |
|---|-----|
| 93 | 574 |
| 7 | 217 |
| 96 | 299 |

## T. & J. KIRKMAN, ET AL. v. VANLIER.

1. Where matters of account between the complainant and defendant are complicated, embracing the transactions of several years, relating to the employment of several steamboats upon their joint account, and made up of many charges, for and against each other, a Court of equity may entertain the complainant's bill for a settlement of accounts, and the recovery of a balance.

2. *Quêre?*—When a demand is primarily enforceable in equity, is it not competent for the complainantin such case to ask a decree against his debtor, and in the same bill to seek to subject debts due to the latter to its payment.

3. The remedy by attachment for the recovery of a legal demand being given by statute to one non-resident against another, Courts of equity by analogy must afford the same facility of collection to a creditor whose claim is of an equitable nature.

4. Where an order of reference to the register is general, viz: of " the matters of account between the parties," without giving any direction as to the mode of taking testimony, whether any should be taken, or whether the same should be specially reported, it is competent for either party to lay before the register the books showing the state of accounts which it is the object of the suit to adjust, and also to examine witnesses *viva voce* in aid or explanatory thereof.

5. *Semble*—Under a general reference to a register to ascertain a fact, he should report his conclusion and need not embody the evidence upon which it is founded.

6. The rule of practice declaring that exceptions to testimony taken by the register must be taken before him, and certified in his report, and if not so taken the exception is waived; consequently, to authorize the Chancellor to sustain an exception, it must appear from the report to have been regularly taken, or at least to be well founded.

7. Where a bill is filed for the purpose of subjecting a sum of money in the hands of a third person, to the payment of a debt due the complainant, if such person is enjoined from using it, does not offer to bring it into Court, &c., but insists upon his right to retain it both as against the complainant and his debtors he will be charged with interest.

8. A bill filed by a defendant to a suit in equity, against the complainant, recited the pendency of the original cause, yet did not pray that it might be regarded as a cross bill, or that the suits might be brought to a hearing at the same time; was filed after an order of reference and report of the register in obedience thereto, but did not ask an injunction, or other order to stay proceedings in the original cause, and no such order was made; nor did the complainant's therein propose to submit to a hearing on bill and answer: *Held*—that the Chancellor might with strict legal propriety, refuse to consider such a bill as a cross suit; and if it was an original independent bill, a decree dismissing it could not be revised on a writ of error sued out in the original cause.

9. Where a fact is alledged in a bill, which *prima facie* must be within the knowledge of the defendants, if he omit to notice it in his answer, he shall be held to have admitted it, at least so far as to dispense with proof from the complainant to establish its truth.

Writ of error to the Court of Chancery sitting in Lauderdale County.

IN July, 1834, the defendant in error filed his bill in the Circuit Court of Lauderdale, against Hugh Findren, Thomas and James Kirkman, and John Stacker, alledging that the former was indebted to the complainant in the sum of three thousand, four hundred and fifty-nine dollars and ninety-six cents. That, that indebtedness occurred in consequence of advances made by Messrs. E. Webb & Co. for the account and benefit of Findren, and for his proportion of losses sustained in the purchase and sale of steamboats; in the running of which they were interested as part owners and joint proprietors. The balance of the account is the result of *debits* and *credits*, but has never been adjusted by settlement between the parties. It is further alledged that the complainant was a member of the firm of E. Webb & Co.; that, that concern has been dissolved, and in consideration of an assumption of its liabilities by him, the debt due by Findren, as well as other demands, have been assigned to the complainant, with authority to use the firm name in their collection.

The bill further states, that Findren and E. Webb & Co. caused to be built the steamboat "Mohawk;" the former being proprietor of four twenty-fourths, and the latter of the

residue of the shares of the boat. Afterwards Messrs. E. Webb & Co. disposed of their shares, as follows, viz: nine twenty-fourths, to Messrs. T. & J. Kirkman, and the eleven remaining shares to John Stacker; which several purchasers, together with Findren, run the " Mohawk" for freight during the business season of 1833-4. That Messrs. T. & J. Kirkman were the agents of the boat; that its earnings were large, and the share of Findren is still in their possession.

It is also alledged, that Findren is a non-resident and insolvent, and that the only means known to the complainant of obtaining satisfaction of his demand is to subject the money due Findren in the hands of T. & J. Kirkman, to its payment. The complainant prays, that inasmuch as, his accounts with Findren are of a nature too complicated to be the proper subject of adjustment in a Court of law, an account may be taken in equity and a decree rendered in his favor for so much as may be found due : that in the meantime Messrs. T. & J. Kirkman be enjoined from settling with Findren, or paying him any thing due upon the account of the " Mohawk;" and that such decree as the complainant may obtain against Findren may be satisfied *pro tanto* from his funds in the hands of the Messrs. Kirkman.

Findren admits in his answer, that he is indebted to the complainant, the amount charged with interest; but he cannot state what amount of his funds are in the hands of the Messrs. Kirkman—he refers to the books kept on the boat to show his proportion of the profits; in addition to which, he insists that he was entitled to twelve hundred dollars, for his services as master of the " Mohawk," for the business season of 1833-4.

Messrs. T. & J. Kirkman admit that they with Findren and Stacker were joint owners of the steamer " Mohawk," as alledged in the bill, and that they were agents of the boat at Florence during the business season of 1833 and '4; as such they made heavy advances for repairs and other expenses, so that they do not admit they have in their hands any funds belonging to Findren, beyond the division of profits they are entitled to retain in virtue of their shares. They aver that there is a large amount of accounts still due the boat, and heavy demands made of the proprietors thereof for losses sustained by persons who shipped merchandise on her; for the recovery

of damages thus sustained, suits have been brought, and are now pending in the Federal Court of West Tennessee, and at New Orleans. The nominal amount due the defendant Findren as shown by an account current is twenty-five hundred and sixty-three 76-100 dollars, subject to deductions which reduce it to the sum of one thousand and seventy-eight 13-100 dollars. In addition to this, these respondents insist that they are entitled to compensation for trouble and expense in collecting the debts due the "Mohawk."

Stacker failed to answer the bill, but as to him publication was duly made, as against a non-resident, and the bill taken for confessed.

Upon the establishment of separate Chancery Courts, this cause was transferred to that tribunal, and an order was there made referring it to the register to examine and state the matters of account between the parties. In obedience to this order the register reported that there was due to the complainant from Findren for principal, the sum of thirty-four hundred and fifty-six 76-100 dollars, with interest thereon, amounting to the sum of nineteen hundred and sixty-two 73-100 dollars. He also reported that Findren's share of the profits, after deducting the amount of his account with the boat, and his proportion of the expenses of defending law suits in New Orleans and Tennessee, was eighteen hundred and fifty-five 04-100 dollars; on this sum there was due for interest nine hundred and seventy-four 04-100 dollars, calculated from the 7th December, 1835, the day on which the books were balanced.

Messrs. T. & J. Kirkman excepted to the report, and assigned the following reasons, viz: 1. Interest was computed in the account against them, although they were restrained by an injunction from paying over the amount in their hands. The 2d, 3d, 4th, 5th and 6th reasons insist that they were charged with moneys not collected—are not credited with moneys paid out—and are not allowed compensation for collecting and disbursing cash, &c. The amounts are particularly mentioned in the exceptions.

These several exceptions were overruled by the Chancellor, and the reports of the register confirmed. A decree was thereupon rendered in favor of the complainant against Findren for

the amount of the sum due by the latter, and it was adjudged that Messrs. T. & J. Kirkman pay to the complainant the amount they are indebted to Findren : that the costs be paid from the moneys in their hands, and Findren be charged therewith.

After the account was taken, and the result reported by the register, a bill was filed by Messrs. T. & J. Kirkman against the complainant, Findren and Stacker, reciting the substance of the complainant's bill, proceedings had therein, and alledging that the latter was the proprietor of the shares of the " Mohawk," which in his bill he affirmed belonged to Stacker: *Further*—they alledge that the complainant has received upon the shares standing in the name of Stacker a larger amount than he was entitled to, and that he (Stacker) is indebted to them ; the amounts of which several sums are particularly stated. The Messrs. Kirkman further state, the complainant is insolvent and a non-resident ; and that Stacker resides in the State of Missouri : they therefore pray that the complainant be restrained from collecting the demand asserted by his bill until they are credited with the set-off claimed by them : that they are remediless at law ; because their accounts are complex, &c. Hence they ask that an account be taken, and for further relief. No injunction seems to have been awarded upon this bill—it was treated as a cross bill, and dismissed at the hearing of the principal cause, with costs.

E. W. Peck and L. Clark, for the plaintiffs in error, made the following points : 1. That Vanlier was a general creditor of Findren, and could not subject through the medium of a Court of equity a debt due to him, or money in the hands of a third person, until after his legal remedy by judgment and execution had proved unavailing. [Story's Eq. Plead. § 10 ; 2 Johns. Ch. Rep. 144; Id. 283 ; 4 Id. 671, 687, 682 ; 1 Monr. Rep. 106 ; 2 Blackf. Rep. 421 ; 3 Yerger's Rep. 81; 6 Rand. Rep. 188.] The non-residence of Findren cannot give jurisdiction to the Court of Chancery ; besides it does not appear but that the complainant resides in the same State with him. [2 Porter's Rep. 374.] The insolvency is equally unavailing ; and even if a ground of jurisdiction, is not proved.

2. The bill should have been dismissed for a misjoinder of

distinct complaints against different defendants.  The Messrs.
Kirkman had nothing to do with the litigation between the
complainant and Findren.   No fraud is alledged, nor is a dis-
covery sought to enable the complainant to establish his de-
mand.   Jurisdiction is not defensible upon the ground that the
bill sought to enforce an account.   If a discovery had been
necessary and actually made, then relief could have been
granted. [1 Story's Eq. § 45–6, 71, 74, 458–9.]

3. The Chancellor erred in overruling the exceptions to the
master's report, which was erroneous.   1. Because it charged
the Messrs. Kirkman with interest, when they had been en-
joined from settling with, or paying over the money to Fin-
dren.   2. Because the account was taken as if the parties had
been part owners merely, whereas the account depended upon
the joint employment of the boat, and as to the profits they
should have been treated as partners. [4 Johns. Ch. Rep. 522.]

4. The cross bill should not have been dismissed.   There
was no regular publication of the testimony before that bill
was filed—(8th rule Chan. Practice)—but if publication had
been duly made, it was not necessary for the complainants in
that bill to have proposed that it should have been heard on
bill and answer. [Story's Eq. Plead. 314, § 395–6.]

A. F. HOPKINS, for the defendant, insisted—1. That the bill
filed by the Messrs. Kirkman could not be treated as a cross
bill ; because it does not pray that it may be heard at the same
time as the original bill ; and no process had been issued or
dispensed with by the appearance of the defendants to it.   [1
Edwds. Rep. 226 ; 5 Monr. Rep. 420 ; Mitf. Plead. 122, note.]
The cross bill cannot be allowed as such, because it contradicts
the answer of complainant therein, who admits that Stacker
had become the proprietor of eleven twenty-fourths of the
" Mohawk." [Mitf. Plead. note 1.]   Besides—it proposes to
put in issue matters not controverted by the answer.

2. The settlement of the account between the complainant
and Findren was within the jurisdiction of equity—it grew out
of their joint ownership of three steamboats. [Story's Partn.
632; 1 Story's Eq. 441–7.]   This being the case as to Fin-
dren, a Court of Chancery would assist the complainant to re-
cover his demand by restraining the Kirkmans from paying

over to F. what was due him, and compelling them to account to the complainant. As to the latter, the fund in their hands was equitable, and might be reached through the medium of equity. If required to exhaust all his remedies against Findren before proceeding against the Kirkmans, the complainant would be delayed, and probably fail in subjecting the funds in their hands.

3. As to the decree against the Messrs. Kirkman for interest, it is clearly correct. They were not obliged to keep the money in hand, but might have brought it into Court and discharged themselves: instead of doing this, they denied an indebtedness; and like an ordinary debtor they should be charged with interest. [Fonb. Eq. 476; 1 McC. Rep. 213, 220; 1 Binn. Rep. 199; 4 Sergt. & R. Rep. 116; 4 H. & Munf. Rep. 416; 2 Johns. Ch. Rep. 108; 6 Id. 358.]

4. The insolvency of Findren, if essential to the jurisdiction of equity, must be considered as admitted, as it is not denied by the answers. [3 Bibb's Rep. 466, 539; 1 Porter's Rep. 375; 3 Id. 125.]

5. It was contended further, as to the bill of the Messrs. Kirkman, that being filed after publication and the master's report, it should have proposed to submit to a hearing on bill and answer alone: that the case made out by it, was not one of mutual credit: that no process was issued, or time asked, for that purpose. [Mitf. Plead. 125, note 1, 2; Paige's Rep. 164; 2 Ves. Senr. Rep. 336.]

Without an order to that effect, Vanlier was not bound to stay proceedings that the cross bill might be heard with the original. [Mitf. Plead. 125, note 1, 2; Mad. Rep. 392; 2 Paige's Rep. 166.] The omission of the Messrs. Kirkman to put their bill in a condition to be heard with the original authorized its dismissal;—but can it be treated as a cross bill, and the decree so far as it operates upon it be revised?

If the bill of the Kirkmans could be treated as an original, entitled to a separate hearing when prepared, the decree of dismissal cannot be revised upon the writ of error before the Court, which brings up only the suit of Vanlier.

COLLIER, C. J.—The points made by the Messrs. Kirkman, who alone complain of the decree of the Chancellor, lead us first to consider, whether the bill discloses such a case, as authorizes the relief which the complainant seeks. It is expressly charged that the matters of account between the complainant and Findren grew out of advances made by a firm of which the former was a partner, and for the proportion of losses sustained by the latter in the purchase and sale of steamboats, in the running of which they were interested as joint owners and proprietors: *Further*—that the balance of the account depends upon *debits* and *credits*, which the parties have never adjusted.

Mr. Justice Story, treating of *account*, as a ground of equity jurisdiction, thus states the law: "In matters of account, growing out of privity of contract, Courts of equity have a general jurisdiction, where there are mutual accounts, (and *a fortiori*, where these accounts are complicated;) and also where these accounts are on one side, but a discovery is sought, and is material to the relief. And on the other hand, where the accounts are all on one side, and no discovery is sought or required; and also where there is a single matter on the side of the plaintiff, seeking relief, and mere set-off on the other side, and no discovery is sought or required; in all such cases, Courts of equity will decline taking jurisdiction of the case." [1 Vol. Com. on Equity, 441. See also, Coleman v. Hutchinson, 3 Bibb's Rep. 210; Breckenridge v. Brooks, 2 A. K. Marsh Rep. 338; Duncan v. Lyon, 3 Johns. Ch. Rep. 360; Hawley v. Cramer, 4 Cow. Rep. 717; Southgate v. Montgomery, 1 Paige's Rep. 41; Miller v. Lord, 11 Pick. Rep. 11; Foster v. Wilber, 1 Paige's Rep. 537; Smith v. Marks, 2 Rand. Rep. 449; Fowle v. Lawrason's Ex'r 5 Peter's Rep. 495; Nelson v. Allen, 1 Yerger's Rep. 360.] The same learned author also says, that cases of account between tenants in common, between joint tenants, between part owners, between part owners of ships, and between owners of ships and the masters, are peculiarly within the jurisdiction of Courts of Chancery. "They all involve peculiar agencies, like those of bailiffs or managers of property, and require the same operative power of discovery, and the same interposition of equity." [1 Vol. Com. on Eq. 446.] *Again*—(in his Treatise on Part-

nership, 631–2)—he considers part owners as tenants in common, and as such, entitled to an account of the earnings and profits of the ship.  " But," says he, " at law, there is no small embarrassment in their proceeding to compel an account of the earnings and profits, which have been received by some of the part owners, who refuse to render an account. The ordinary remedy in cases of this sort is by a bill in equity, to which, in general, all the owners should be made parties, either as plaintiffs, or as defendants.  We say the ordinary remedy, and to which all should be made parties, because there may be cases in which one of the part owners, or the ship's husband, or any other agent may have entered into an agreement, by which he may bind himself to account with each of the part owners, severally, for his separate share of all proceeds and profits in his hands; and such an agreement, under such circumstances, may entitle each part owner to maintain an action at law for such share; and if that should fail or be found inadequate, it will entitle him to maintain a separate bill in equity for an account thereof, without making the other part owners parties."

The matters of account between the complainant and Findren must have been complicated, embracing the transactions of several years, relating to the employment of several steamboats upon their joint account, and made up of many charges for and against each other.   In this view, the case as against Findren, is proper to be considered in equity; and when we add the fact, that the complainant and himself were joint owners, the jurisdiction of that tribunal cannot be disputed, if the authorities cited are to be recognized.

But it is insisted, that although the decree may be sustained as to Findren, the Messrs. Kirkman were improperly joined as defendants with him.   To sustain this argument, we have been referred to a familiar class of cases, which determine that a creditor cannot have the aid of a Court of equity to enable him to enforce the collection of a *legal* demand, or to give him the benefit of the estate of the debtor in the hands of a third person until he has exhausted his legal *remedies*.   This principle is clearly stated in the cases cited for the plaintiff in error.   [See also, 1 Paige's Rep.  305; 4 Monr. Rep. 581;  3 Munf. Rep. 521;  3 Litt. Rep. 427; 4 Ohio Rep. 125;  3 Leigh.

29

Rep. 299; 1 Dana's Rep. 516; 2 Id. 98; 4 Paige, 309.] But does it apply to a case in which the demand is primarily en-forceable in equity? Is it not competent for the complainant in such case to ask a decree against his debtor, and in the same bill to seek to subject debts due to the latter, to its pay-ment? [Donovan v. Finn, et al. Hopk. Rep. 59; Halbert v. Grant, 4 Monr. Rep. 583; Moore v. Simpson, 5 Litt. Rep. 49.] However this may be uninfluenced by statute, we think the remedy adopted in this case is in analogy to that authorized by our attachment law, and on that ground we think the jurisdic-tion of Chancery may be supported as against all the parties to the bill. And the same conclusion must be attained wheth-er the complainant reside within the State or not.

The ninth section of the act of 1833 "concerning attach-ments, (Clay's Dig. 57, § 9,) enacts, that when one non-resident is indebted to another, and removes his property into, or holds property in this State, which would be subject to an attach-ment for the benefit of a resident of this State, the same bene-fit shall be extended to such non-resident, as is by law secured to persons residing within this State : *Provided,* that security residing in this State shall be given as in other cases; and in addition to the oath required in other cases of attachment, the plaintiff, his agent, &c., shall swear, that the defendant has not sufficient property within the State of his residence, within the knowledge or belief of the plaintiff, &c., whereupon to satisfy the debt on which the attachment issues." By the thirty-first section (Id. 61, § 31,) it is declared that it shall not be necessary for the person suing out an original attachment, to state in the affidavit, that the plaintiff therein is a citizen of this State; and whenever an attachment shall be issued in favour of any one not authorized by law to sue out the same, it shall be abated on plea of the defendant, supported by affidavit. It is further provided that the attachment law shall not be strictly or rigidly construed. [Id. 59, § 17.] The nineteenth section (Id. 59, § 19) authorizes an attachment to be levied in the hands of a third person, who will be thereupon required to state upon oath what he is indebted, &c. to the defendant.

In the case at bar it is distinctly alledged that Findren is a non-resident, is insolvent, and the complainant has no other means of obtaining satisfaction of his demand, than by sub-

jecting the fund in the hands of T. & J. Kirkman to its payment. These and all other facts stated in the bill are verified by the complainant's affidavit. In addition to this, the complainant under the *fiat* of the Chancellor entered into bond with surety, conditioned, to pay Findren all damages, &c., and to abide by and perform the decree made in the premises. This being done, the injunction issued to restrain the Messrs. Kirkman from paying over to Findren, &c., the money which they held to his credit. These proceedings are strictly analagous to those required by statute previous to suing out an attachment, and if the party who has an equitable demand cannot be permitted to attach by suit in equity, the debt or property of his debtor in the hands of a third person, a Court of Chancery must be too restricted in its powers, to afford the redress which the law forum administers in an analagous case. This would be to reverse our notions of the liberal and extended jurisdiction exercised by Courts of equity in advancement of justice. Chancery comes in aid of the Courts of law, and affords a remedy where the latter tribunals cannot apply the law, or the redress there had is inadequate. In such cases it never opposes law, but gives effect to it, as nearly as may be, consistently with the nature of its proceedings. Carrying out these principles, we think the jurisdiction of equity as it respects the Kirkmans, if all other grounds failed, might be rested upon this, viz : the statute gives to one non-resident the remedy by attachment for the collection of a *legal* demand against another, which may be levied by garnishment in the hands of a third person; and by analogy Courts of equity must afford the same facility of collection to a creditor whose claim is of an equitable nature.

The order of reference to the register is general, viz: of " the matters of account" between the parties, without giving any direction as to the mode of taking testimony, whether any should be taken, or whether the same should be specially reported. Under this reference it was competent for either of the parties to lay before the register, the books showing the state of accounts of the proprietors of the " Mohawk," for the business season of 1833 and '34; and also to examine witnesses *viva voce,* in aid or explanatory thereof. In Remsen v. Remsen, 2 John. Ch. Rep. 495, the Chancellor after noticing

the doubt which existed previous to Parkinson v. Ingram, 3 Ves. Rep. 603, whether the master could examine a witness, says, it was declared in that case to be the settled practice for the master to take the examination on references before him. *Further*—says the Chancellor,—" The books assume the practice to be settled, that the parties and witnesses are to be examined before the master upon written *interrogatories ;* and that in the case of the examination of a party, the interrogatories are settled by the master, and in the case of a witness, they are settled by the counsel." " But though the exhibition of interrogatories, duly settled, be the usual mode of examination, appearing in the books, I do not apprehend that it is indispensable. The practice with us, as I have reason to believe, has been more relaxed, and oral examinations, have frequently, if not generally prevailed. This appears to me to be a question merely of convenience, and does not involve any principle of policy, or of right; but whether examinations shall be secret, and to what extent they shall be carried, suggests much more important considerations." The opinion of the Court is concluded, by laying down some well matured rules, deduced from the books, by which examinations before the master should be conducted. [See also 3 Paige's Rep. 160.]

In the matter of Hemiup, 3 Paige's Rep. 305, it is said that the master should not report the evidence when it was referred to him to draw certain conclusions of fact. When the Court refers it to him to examine and report as to the existence of a fact, or as to any other matter, it is his duty to draw the conclusion from the evidence produced before him, and to report that *conclusion only.* [See also 1 Molloy's Rep. 54; Id. 187.] And it has been held that a master in Chancery or commissioner substituted for him, *pro hac vice,* sometimes exercises greater powers, according to the practice of some of the States, than are exercised by a master in England. [Farmer and another v. Samuel, &c., 4 Litt. Rep. 187.]

It is provided by statute, that, " if a decree cannot be given on the merits of the case, until all matters of account between the parties are referred, then the same shall be referred and ascertained before the hearing, under such rules as the Court may prescribe." [Clay's Dig. 352, § 43.] The forty-fourth

rule for the regulation of the practice in Chancery declares, that "exceptions to testimony admitted by the register must be taken before him, and certified in his report ; if not so taken the exception is waived." [2 Ala. Rep. 17.]

The report affirms that the register had carefully examined "the verified statements of the parties in connection with the books of the steamboat 'Mohawk,' together with the proof presented by the parties on either side, to sustain their respective accounts;" and as the result of such examination, he states the accounts between the parties, and deduces the balance due to Findren by T. & J. Kirkman. None of the proof is embodied in the report of the register, nor does it appear from the record that any exception was taken to its admission. We cannot then, undertake to determine from the case as presented to us, whether the Chancellor erred in either of the points excepted to, save that which relates to the charge of interest. As to that, the report is sufficiently explicit in showing on what basis it rests. It states that the books of the "Mohawk" were balanced on the 7th of December, 1835, near eighteen months after the exhibition of the complainant's bill, and on that day there remained in the hands of the Messrs. Kirkman the sum of eighteen hundred and fifty-five 04-100 dollars, Findren's dividend of the earnings of the boat. The record does not inform us that they at any time proposed to bring this sum, or any part of it into Court, or in any manner place it under its direction. In fact, at the time their answer was filed, (June, 1835,) they were unwilling to admit their accountability to Findren to any amount—state that suits were then pending against the proprietors of the "Mohawk" for the loss of, or injury to goods, the transportation of which they had previously undertaken, &c. When these points were determined, (except the one which had been instituted in Louisiana,) we are not informed. That was decided in June, 1836, in favor of the defendants, and for any thing appearing to the contrary, the actions which had been brought in Tennessee, and in which the defendants were also successful, may have been determined previously. Under this state of the case are the Messrs. Kirkman chargeable with interest from the time they had realized the amount due the owners of the boat and balanced the books?

It has been said to be agreeable to law, and "just and reasonable in itself, that the defendant who retains and applies the money of another to his own use, should pay interest for that use." [The People v. Gasherie, 9 Johns. Rep. 71.] So where money is received to which another is entitled, and retained by fraud, interest should be calculated from the time when it was received—(Dodge v. Perkins, 9 Pick. Rep. 388)—and the same result follows when the money received is illegally claimed and withheld from the plaintiff. [Greenby v. Hopkins, 10 Wend. Rep. 97.] If one receives interest upon the money of another, or derives an advantage to himself from its retention, he should pay interest to the owner. [Lamb v. Lamb, 11 Pick. Rep. 374.] Where an account has been liquidated and the balance ascertained by the parties, interest will be allowed thereon, unless the payment is delayed by agreement. [Walden v. Sherburne, 15 Johns. Rep. 409.]

The vendee of land to whom a conveyance has been made and possession delivered, cannot excuse himself from the payment of interest, upon the ground that he was prevented from paying the principal, by a third person who set up an adverse claim, and commenced a course of litigation which continued for ten years, and was then determined in favor of the vendee's title. [Selden v. James, 6 Rand. Rep. 465.] To excuse the vendee in such case from paying interest, it is said not to be enough..that he should be ready and willing to pay the principal; but it should appear that he kept the money, useless and unproductive, by him—(Id.) The case of Brockenbrough v. Blythe's exr's, 3 Leigh. Rep. 619, goes even farther than this, and maintains, that in order to relieve himself from the payment of interest, the vendee should give notice to the vendor that he has kept the money idle.

Any trustee will be chargeable with interest if he has made interest, used the money, or is guilty of laches or neglect. [Carroll v. Connett, 2 J. J. Marsh. Rep. 303; Cassell v. Vernon, 5 Mason's Rep. 332.] And it has been held, that if an agent does not in a reasonable time apply money to the purposes for which it was received, he will be liable to pay interest. [Harrison v. Long, 4 Dess. Rep. 110.] So if one man retains the money of another, the presumption is, that he kept it for the purpose of profit, and that he should therefore

pay interest on it. [Simpson v. Feltz, 1 McC. Ch. Rep. 220.]
In Miller v. Beverly, 4 H. & Munf. Rep. 416, it was held that
a trustee was liable to pay interest on the trust money in his
hands, unless he can show that it was necessarily kept in hand
for the purpose of the trust; this he may do upon oath, sub-
ject to be controlled by other testimony and the circumstances
of the case; and in such case interest is calculated from the
time the money was received. But the case more strikingly
analagous to the one before us, is Shackleford v. Helm, 1 Da-
na Rep. 338, in which it was determined, that a debtor is not
excused from the payment of interest, because the debt is at-
tached in his hands by bill in Chancery; unless he bring the
money into Court, or is enjoined from using it. So it has been
decided, that an officer of Court who has money in his hands,
raised by the sale of attached effects, which the Court forbade
him to pay over, shall pay interest, unless it appear that he
kept the principal by him. [Hunter's Exr's v. Spotswood, 1
Wash. Rep. 145.] See further upon the question of interest,
Jones v. Williams, 2 Call's Rep. 106; Taylor v. Kinney,
1 Dana's Rep. 398; 9 Johns. Rep. note (a) and cases there
cited; Reid v. Rensalaer Glass Factory, Con. Rep. and
and cases there cited; Bass & Carter v. Gillilands' heirs, 5 Ala.
Rep. 761.

We have been thus particular in noticing the adjudications
upon this point, because the case is one of importance in it-
self, and as it respects the right of the complainant to recover
interest under the circumstances, almost *res integra* in this
Court. The case cited from 1 Dana, 338, goes quite beyond
what the facts of the present require, in order to charge the
Messrs. Kirkman with interest. There the party retaining the
money did not set up a claim to it, or deny his liability to ac-
count for it;—here they did not admit that they were charge-
able for moneys belonging to the complainant's debtor, but
insisted upon the right to retain whatever they might collect
upon the accounts due to the owners of the "Mohawk." No
injunction was awarded to restrain the use of the dividend of
of Findren; as the Messrs. Kirkman did not concede his right
to it, but insisted they were entitled to its control, it is perfect-
ly clear that they are accountable for interest. The presump-
tion cannot be indulged, even if it would avail any thing, that

the money was kept idle, but it should rather be intended that it was actively employed—whether profitably or not is wholly unimportant.

Conceding that all the suits which had been brought against the proprietors of the "Mohawk" for losses sustained by the shippers of goods, were pending on the day, from which the register charged interest, and still as the Messrs. Kirkman denied that they held any funds to which Findren was entitled, they would not occupy a more favorable attitude. If they had admitted a liability, either absolutely or *sub modo*, then perhaps the Court might have made some order in respect to the money which would have protected the rights of all parties, and made it productive until they were finally adjusted. This admission not being made, as already observed, there was an assertion of the right to use the money, which is enough to authorize the charge for interest; which, according to the reason of things, and at least one of the authorities cited, should be calculated from the date of its reception.

It is said to be a general rule, that a cross bill must be brought before publication has passed in the original cause, unless the plaintiff in the cross bill, will go to the hearing upon the depositions already published. This rule is intended to prevent perjury, &c., in case the parties should after publication of the former depositions and proof, be permitted to examine witnesses *de novo* touching matters, to which they or others have been already examined. But publication will be postponed for the purpose of enabling a defendant to file a cross bill upon a special application showing sufficient grounds for such an order. When an original and cross bill are filed, both causes usually proceed to a hearing together, which could not be done, if the cross bill were filed after publication in the original cause, unless the cross bill were heard on bill and answer. [Story's Eq. Plead. *315.*] Mitford in his Treatise on Pleading, (81) says, a cross bill is a bill brought by a defendant against a plaintiff 'or other parties in a former bill still pending, touching the matter therein litigated. [See also Galatian v. Erwin, Hopk. Rep. *58.*] Such a bill may set up additional facts not alledged in the original bill, where they constitute part of the same defence, relative to the same subject matter. [Underhill v. Van Cortlandt, 2 Johns. Ch. Rep. *339.*] But

it must be confined to the subject matter of the bill. [May v. Armstrong, 3 J. J. Marsh. Rep. 262.] A bill which does not pray that the cause may be heard at the same time with another, and one decree be had in both, is not in form a cross bill. [Wright v. Taylor, 1 Edwds. Rep. 226.]

Subpœna should be served upon the filing of a cross bill. [Anderson v. Ward, 5 Monr. Rep. 420.] Such a bill cannot contradict the assertions contained in the original answer. [Hudson v. Hudson's Ex'rs. 1 Rand. Rep. 117.]

White v. Buloid, (2 Paige's Rep. 164,) is a leading case upon the law in respect to cross bills, and determines several points pertinent to the case before us. Among other things, it is said not to be a matter of course, to stay proceedings in the original suit in any case, unless the defendant in the cross bill is in contempt for not answering; if it be not filed before, or at the time of answering in the original suit, the delay must be accounted for, or the proceedings will not be stayed; it is not too late to file a cross bill after the proofs in the original suit are closed, if the complainant in the cross bill is willing to go to a hearing on bill and answer as to the cross suit; but the delay of the complainant in the cross suit will not be permitted to delay the hearing of the original cause. [See further, Mitf. Plead. 83, note 1, and cases there cited.]

Without stopping to inquire whether the matter of the bill filed by the Messrs. Kirkman is the proper subject of a cross suit, it may be enough to say, that although it recites the pendency of the original cause, yet it does not pray that it may be regarded as a cross bill, or that the suits may be brought to a hearing at the same time;—it was filed after the order of reference and report of the register in obedience thereto; all which are tantamount at least to publication, and in fact pre-suppose it. In addition to this, it may be remarked, that the bill does not ask an injunction, or other order, to stay proceedings in the original cause, nor was any such order made; nor did the complainants therein, propose to submit to a hearing on bill and answer. In this predicament of the cause, the Court might with strict legal propriety, have refused to consider the bill of the Messrs. Kirkman as a cross suit. If it can be regarded as an original independent bill, and as such, was prematurely

30

dismissed, the decree of dismissal cannot be revised on the writ of error in the present case.

It may be questioned whether the *onus* of proving the insolvency of Findren could be thrown upon the complainant in any other manner, than by an express denial of the fact, either upon knowledge or belief; the allegation being made merely for the purpose of giving jurisdiction, its truth perhaps would be presumed unless denied. Be this as it may, the fact of insolvency must under the circumstances of this case, if it exist, be known to the Messrs. Kirkman, and a failure to deny it will operate as an admission of its truth.

This view is decisive of all the points presented upon the record; the result is, that the decree of the Court of Chancery must be affirmed.