## INGERSOLL *vs.* CAMPBELL.

[ACTION FOR MONEY HAD AND RECEIVED BY DEFENDANT FOR USE OF PLAINTIFF.]

1. *Blockade; contract to violate; when void.*—A government, during a rebellion against its authority, may legally blockade its own ports in possession of the insurrectionary authorities, and a contract to violate such blockade is illegal and can not be enforced.

2. *Same; what contract growing out of, may be enforced.*—But money earned upon such a contract and paid to the party earning it, vests in the person so earning it a good and legal title; and if, after such payment, he deposits or leaves such money with a person to keep for him, he may recover it from him, although the person with whom the money was so left, as agent for another, made the contract to violate such blockade.

3. *Bailee, when becomes liable for interest.*—If one person holds the money of another on deposit to keep until demanded, and on demand and without reasonable excuse refuses to deliver such money, he becomes liable for interest from the time of the demand.

4. *Charge to jury; when will be presumed to have been rightfully refused.*— Where all the evidence is not set out in the bill of exceptions, it will be presumed, in order to sustain the refusal to give a charge, that it was abstract and not supported by the evidence delivered on the trial.

APPEAL from the Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

This was an action commenced by Campbell against Ingersoll for money had and received by him to and for the use of the plaintiff. There was a jury trial, and verdict and judgment for Campbell.

From the bill of exceptions it appears that there was evidence offered on the trial in the court below, which was received without objection, which tended to prove that Campbell was a pilot residing in the city of Mobile in this State, in the year 1864, during the late civil war, and that as such pilot he was employed by Hopley & Co. of Charleston in the State of South Carolina, to take charge of the British ship "Virgin," then in the port of Mobile, and pilot the same from said port of Mobile to Havana in Cuba, and

bring another boat back again from Havana to Mobile, if required to do so by the agents of Hopley & Co. in Cuba, for which service the sum of three thousand dollars in gold was to be paid him, as follows : one thousand dollars in advance at Mobile, five hundred dollars on the arrival of the "Virgin" at Havana, and five hundred dollars on the departure of Campbell from Havana, and one thousand dollars on his return and arrival at Mobile ; and, in case Campbell was not required to return to Mobile after reaching Havana, he was then to be paid fifteen hundred dollars in gold and his expenses back to a "Confederate port." At the time of this agreement to pilot the "Virgin" to Havana, the port of Mobile was blockaded by the forces of the United States, and the full performance of the agreement with Hopley & Co. thus made, required a violation of such blockade. Ingersoll was the agent of Hopley & Co. in Mobile, and it was through him that Campbell was employed. The "Virgin" was loaded with cotton, and "when she was ready to depart on her voyage from Mobile, she being loaded and ready for sea," Campbell "was ready and willing to go, and before leaving went to Ingersoll's office to arrange his business prior to his departure," when Ingersoll said to him, "I suppose you want your money ?" Campbell replied, "he did not want it then, as he had enough." Ingersoll then said, "well, shall I pay it to your wife ?" Campbell replied that his wife had enough—"put *my money* in a sterling bill and *keep* it till my return." Ingersoll then directed his book-keeper to draw a sterling draft for Campbell. On the same day that this occurred, Campbell left on the "Virgin," and went down the bay on her. The captain of the "Virgin" watched for some time for an opportunity to put to sea, but the United States fleet having entered the bay, the "Virgin" was finally brought back to Mobile and the voyage abandoned, the cargo landed and the crew were paid off by Ingersoll. Shortly after this Campbell was arrested by the United States military authorities and kept as a prisoner of war for about one year. On his return to Mobile, after his release, Campbell called on Ingersoll and demanded his money left

with Ingersoll, and its payment was refused, Ingersoll say-ing, at the time, that he had no money in his hands for him.

The bill of exceptions further states that there was testi-mony that Hopley & Co. were still solvent; that Ingersoll disbursed the vessel in Mobile ; that Ingersoll, before the demand of plaintiff, had settled all his affairs with Hopley & Co. and turned over to them all their property which had come into his hands.   There was also evidence tending to show that, at the commencement of the suit, Ingersoll had no property in his hands  belonging to Hopley & Co., and that the money disbursed  by him was furnished from time to time by Stewart, of the firm of Hopley & Co.

The bill of exceptions then states : "Upon the foregoing evidence the court charged," &c.

The court charged the jury in substance, that the contract to run the blockade, &c., by which plaintiff was to receive $1,000 in advance, as set forth in the evidence, if they be-lieved it, was illegal and void and could not support an action; but, on the other hand, if such a contract was made and once executed, although illegal, the law would not aid any party in seeking to recover back any money paid under it.   If the jury should believe from the evidence that the defendant actually had in his possession one thousand dollars in gold, placed in his hands by the owners of the "Virgin," to be paid to plaintiff as a pilot on the "Virgin," to enable her to evade the blockade then existing at the port of Mobile, and that defendant acknowledged he had it, and the plaintiff left it with the defendant, then this would be a payment by Hopley & Co. to the plaintiff, and plaintiff would have a right to recover it from the defend-ant, because amounting to a payment from Hopley & Co. to Campbell.

The defendant excepted to the giving of this charge, and requested three written charges, in substance as follows :

1st. If the jury believe that the object of the contract, as an incident of which this suit is brought, was to run the blockade, &c., [as set out in the evidence,] then  plaintiff can not recover.

2d. That although the jury believe,· from the evidence, that defendant received the money or its equivalent, they can not find for the plaintiff, "if it appears that defendant has since settled up with the parties from whom he is alleged to have received it."

3d. That plaintiff can not recover unless he has shown that the defendant actually received money, or money's worth, as the property of the plaintiff, previous to the commencement of the suit, nor could he recover any more than the amount which the plaintiff has shown was actually so received by defendant, and if any such money had been actually so left in his hands, but left under an illegal contract, then plaintiff could not recover.

To a refusal to give these charges defendant excepted, and now brings the case here by appeal, and assigns as error—

1st. The charge of the court.

2d. The refusal to give the written charges asked by the appellant.

P. HAMILTON, for appellant.—The contract to evade the blockade was illegal, and the courts of this county will not enforce it.

2. The plaintiff's claim does not rest on contract with defendant. Its merit, if it have any, is that plaintiff, *ex equo* and *bono*, is entitled to the money, and the form of action is equitable, and merits of plaintiff's case can be inquired into.—10 Ala. 836 ; 2 Barb. 136 ; 2 Denio, 91 ; 7 Ala. 486 ; 13 Wend. 490.

3. To assert an equity in plaintiff, in such case, is a contradiction in terms.—13 Ala. 406 ; 16 Wend. 574.

4. Hopley & Co. had a right to withdraw their money from Ingersoll.—22 Pick. R. 181.

5. If money in hands of an agent be withdrawn, before the claim be made by the third party, the right of action against the agent is gone.—4 Cow. R. 454 ; 4 Burrows' R. 1984.

For the correctness of the principle assumed by defendant,—See 24 Wend. 387 ; 15 N. Y. 9, 95.

GEORGE N. STEWART, contra.

(Appellee's brief did not come into Reporter's hands.)

PETERS, J.—The evidence in this case tends to show that Campbell entered into two contracts with Ingersoll : The one with him as the agent of Hopley & Co., to pilot the ship "Virgin" from the port of Mobile to Havana, in violation of the blockade maintained by the forces of the United States of the said port of Mobile.   There is no doubt, that in case of a civil war or rebellion, a government may blockade its own ports.—*Prize Cases*, 2 Black. 635 ;  Pres't Lincoln's Proc. of Blockade, April 19, 1861 ; U. S. Stat. at Large, appendix, p. ii, No. 4 ;  *Santissima Trinidad*, 7 Wheaton, 283.   And a contract to violate a blockade so set on foot was void, because it was forbidden by the public policy of the nation.—*Kennett v. Chambers*, 14 How. 38.

The second contract was made by Campbell with Ingersoll, in his individual capacity.   In this the evidence tends to show that Ingersoll agreed to become the bailee of Campbell for the one thousand dollars in gold, which was advanced to Campbell by Hopley & Co., in part execution of the illegal agreement to violate the blockade.   This contract of bailment the jury by their verdict have declared did exist.   If it did, it was not illegal.   On the payment by Hopley & Co., through their agent, Ingersoll, of the one thousand dollars in gold to Campbell, on the contract to violate the blockade, the money thus paid became the property of Campbell.   The illegality of the contract on which this money had been earned did not taint the validity of Campbell's title to it.   And if it was Campbell's money, then he could leave it or deposit it with Ingersoll to keep for him until his return, and Ingersoll might agree to this.   Such a transaction would not be unlawful.   It was at least a deposit which amounted to a naked bailment, if no more.—Story's Bailm. §§ 3, 4 ;  2 Pars. Cont. 89, 96, 97 ; 2 Kent. 559, 560, 566, 567.   There can be no reasonable question about the lawfulness of such a con-

tract. Upon this bailment, it seems, this action is founded, and not upon the contract to violate the blockade. A legal agreement may be connected with matters growing out of the execution of an illegal contract, but this connection does not necessarily taint the legal transaction with illegality.—*Armstrong v. Toller*, 11 Wheaton, 258. Such is the case in this instance. Then, it appears that the contract between Ingersoll and Campbell, whatever this might have been, was not forbidden by law.

On such a contract interest is recoverable, after demand. *Porter v. Nash*, 1 Ala. 452 ; *Kirkman v. Vanleer*, 7 Ala. 217; *Cheek v. Waldrum and Wife*, 25 Ala. 152 ; *Maxey v. Knight*, 18 Ala. 309.

The charge of the court below was in conformity with this exposition of the law applicable to the facts, and it was therefore free from error. The first and second charges, asked by the defendant below, which were refused by the court, being in opposition to the charge as given, were properly refused. The third charge asked by the defendant was correct, so far as it placed the right to recover on the fact that the defendant must have actually received money or money's worth as the property of the plaintiff, previous to the commencement of the suit.—Greenlf. Ev. § 117 ; *Hill's Adm'r v. Kennedy*, 32 Ala. 523 ; *Hitchcock v. Luken's*, 8 Port. 333. But the second portion of this charge is erroneous ; because it limits the recovery to the amount deposited, and assumes that the contract upon which it was deposited was illegal. The bill of exceptions does not purport to set out all the testimony delivered in the cause. In such a case, the presumption to be indulged in this court is, that there was evidence before the court below to support the action of that court. It will therefore be presumed that this charge was not supported by the proofs, and, therefore, properly refused.

Let the judgment of the court below be affirmed.