GOODWIN ET AL. v. McGEHEE ET AL.

1. The decision of the supreme court made in a cause, is the law of that particular case.

2. An averment in an answer to a bill, filed for relief against the stockhold-

ers of a chartered company, " that the company has no real, or personal property, out of which their executions can be satisfied," is a sufficient allegation of insolvency, to let in the defence of an equitable offset.

3. It is sufficient in equity pleadings, if the facts which constitute the defence relied upon, are stated, to entitle the party to the appropiate relief, though a wrong name be given to the defence set up.

4. The complainant must make out the title to the relief which he seeks by his bill, or to some relief consistant with its allegations. The defendant is only required to rebut the plaintiff's equity, and may rely upon matters purely legal, if connected with the matter of the bill for his defence; and may, by a cross bill require the plaintiff to answer thereto.

5. In all cases, where the object is to deprive a party of rights acquired *bona fide*, by affecting him with 'constructive notice of a pending suit, the *lis pendens* begins from the service of the *subpoena*, and not from the time the bill is lodged in the register's office.

6. The omission of a party to assert a fact material to his defence, which is within his knowledge, though it may not deprive him of the benefit of testimony taken to establish the fact, is a reason for requiring more stringent proof.

7. An insolvent corporation, cannot, by resolution or otherwise, give away the effects belonging to it, to the prejudice of creditors; and any arrangement entered into between the corporation and its stockholders, with the view of defeating the claims of creditors, by which the stockholders were allowed to purchase up depreciated and repudiated claims, and thus to extinguish their indebtedness for stock, would be void, both at law and in equity. But a company having various debtors, as well as creditors, may provide, that if the evidence of the debts due by it are obtained by its debtors, and filed for cancellation, the one shall extinguish the other.

8. A set off in equity, in favor of a defendant, can only be had upon a cross bill filed by him, but when the defence is only in the nature of a set off in equity, by showing a discharge of the liability sought to be enforced, before the filing of the bill, there is no necessity for a cross bill.

9. A corporation, like an individual person, may cancel a debt due it, by setting off a debt from the corporation to the same person; whether the debt be due from a stockholder for stock, or on any other account.

10. After the lapse of seven years, from the time of filing an answer, it is not error in the chancellor to refuse to permit an amended answer to be filed, making an entirely new case, when by the exercise of ordinary diligence, the facts set forth in the amendment might have been ascertained in proper time.

11. The master, when directed to ascertain the facts of a case, may receive the testimony of witnesses pertinent to such facts, without an order expressly directing him to that effect.

Vol. 15—30

Error to the Chancery Court of Montgomery.   Before the Hon. J. W. Lesesne, Chancellor.

THIS bill was filed by the plaintiffs in error against the holders of the stock in the Montgomery Rail Road Company, to subject the amount due from the defendants as such stockholders, to the payment of their several judgments rendered in favor of the plaintiffs respectively on the first Monday in March, 1840, and upon which the plaintiffs aver they have exhausted their legal remedy by returns of *nulla bona,* on executions which have been issued on said judgments.

The bill was filed on the 22d of May, 1841, and was a-mended in January, 1845, charging that a certain deed of trust executed by the company, transferring the entire effects of the company to trustees to secure certain bonds, was fraudulent.   A sale having been made by the trustees under the deed, a supplemental bill was afterwards filed, making the purchaser a party, and attempting to charge the property in his hands as belonging to the company.

Proof having been taken, and a decree pronounced dismissing the bill, the plaintiffs brought the case to this court, (11 Ala. Rep. 437,) where the decree of the court below was reversed, and the cause remanded, that an account might be taken against the stockholders, where stock had not been called in, as to the amount of their indebtedness, for which no call had been made by the company, and it was further considered that the amended and supplemental bills, so far as these seek to charge the trustees, the purchasers under them, and the Montgomery and West Point Rail Road Company, should be dismissed.

After the cause was remanded, the chancellor pronounced a decree, dismissing the amended and supplemental bills, and awarding a reference to the master, to state an account of what was due from the stockholders in conformity to the decree of this court.   The master was required to consider the stockholders named in the pleadings, as having transferred or forfeited their stock, not liable to account with the plaintiffs. The master reported upon the matters submitted to him, to which both parties excepted.   The chancellor confirmed the report, and decreed accordingly—and both parties now as-

sign error in this court.    The elaborate recital of the facts in the opinion of the court, renders a further statement unnecessary.

WILLIAMS, WATTS and ELMORE, for plaintiff in error.

1. Amendments to a bill are always esteemed but a continuation of the original bill, and therefore form a part of it. 1 Dan. Ch. Pr. and Pl. 455, and vide the authorities at n. 1. Amendments then cannot be dismissed unless the entire bill is.

2. The court should have granted the order for reference moved for by complainants, found in the part of the record added by consent.    Vide the case of Allen et al. v. Montg'y R. R. Co. 11 Ala. 437.

3. The compact or agreement relied on by McGehee, Scott, Cowles and Taylor, with the trustees, to buy up the depreciated bonds of the company, and they pay off their stock due *bona fide* to the company, and out of which [stock] the creditors had a right to look for the payment of their demands, was fraudulent and void as to the creditors; but it was in effect allowing the stockholders to pay the amount of their stock with a sum far less than the true amount.    19 Johns. Rep. 456.

4. The judgment of complainants against the rail road company secures to them an equity to be paid out of the amount then due by the stockholders, and the purchasing up the bonds of the company, when they were below par, and had been repudiated by the company, does not give such purchasers an equity to set off their bonds in payment of their stock, superior to the equity of the complainants to be paid out of such stock so [due; and if it does, this equity cannot exist to an amount more than what they paid for these bonds.    Reid v. Norris, 14 Eng. Ch. Rep. 362, and authorities there cited.    In the matter of the Receiver of the Middle District Bank, 1 Paige, 585.    Vide also Mead v. Merril & Peck, 2 Paige, 402; Reid v. Warren, 5 Ib. 650.    The judgment of complainant is conclusive against the stockholders, unless they can shew fraud or error in the judgment.    20 Johns. 669.

5. A bill filed by a creditor to subject equitable assets cre-

ates a lien on those assets from the filing of the bill. 1 Paige, 638 ; Ib. 637 ; 5 Johns. Ch. 280.

6. The probata and allegatta must agree. Therefore proof of an existing demand will not be allowed on the allegation of payment, or on the allegation that he owes nothing; such proof can only be allowed on the allegation, and claiming the same as a set off. The plea of set off should discover such a state of facts as would entitle the plaintiff pleading it, to maintain his action at law, if he was plaintiff in the case. Crawford v. Simonton, 7 Port. 110. And a set off cannot be allowed in equity on any other than legal rules, except on the express ground of the insolvency of the party. Tuscumbia R. R. Co. v. Rhodes, 8 Ala. 206. It must then in this case, be on the express allegation in the answer, that the company is insolvent, and this too should be proved. In the case before the court, none of the defendants alledge the insolvency of the company in their answers.

7. The set off here cannot be allowed but by a cross bill ; for the allgation insolvency is necessary and material to allow the set off insisted on ; and this is an allegation to which the company and the creditors have a right to respond, which can only be done under a cross bill.

8. Set offs are not allowed in equity, except they could have been made at law, unless upon two grounds. 1. Except where a special agreement exists between the parties to allow the set off. French v. Garner et al. 7 Porter, 549. 2. On the express ground of the insolvency. Tuscumbia R. R. Co. v. Rhodes, 8 Ala. 206. If express agreement that these bonds were to be received in payment of stock, then the same should have been alledged and set forth in the answers, which was not done.

BELSER and HARRIS, contra.

1. The case now before the court is not such a one as authorized new proof to be taken before the register. The parties once had an opportunity fully to prove their cause. It was decided on the proof first taken by the chancellor, carried afterwards to the supreme court, and there reversed. The order of the last named court, in the conclusion of its opinion, and the order of reference of the chancellor, based

on it afterwards, shows that the whole matter, should have been decided on the bill, answers, and proofs, in the cause originally taken. Allen et al v. Rail Road Co. 11 Ala. 437; Anderson v. Hooks, Ib. 953; Rake's Adm'r v. Pope, 7 Ib. 162; Kirkman v. Van Lier, Ib. 217.

2. If it was right to re-open the cause to new proof, the answers and proofs connected with the amended and supplemental bills, should have been examined, and if this were done, it will be seen that the whole of the stock contended for, was conveyed away by deed, which deed was executed before complainant's bill was filed, and which has been pronounced by the supreme court to be fair and valid. And the fact, that the supreme court ordered the amended and supplemental bills to be dismissed, does not preclude the chancellor from looking into it as part of the cause, at least so far as the proof taken in it is resposive to defendant's answer to said amended and supplemental bills, and so far as it goes to aid them, in defeating the original bill. If the defendants are liable on the deed set up and inveighed against in the amended and supplemental bills, for their subscriptions to the purchasers under that deed, they ought not to be made liable to these complainants, who obtained their lien, if they have any, on the stock owed for by the defendants, after the execution and delivery of said deed in 1839. Allen et al. v. Montgomery R. R. Co. 11 Ala. 437.

3. The insolvency of the company is shown by the bill, in the averment of the return of *nulla bona*, and that all the other stockholders are insolvent, and out of the jurisdiction of the court.

4. It is stated in the answers, and admitted, that each of the defendants, had paid up seventy per cent. of their subscriptions before the filing of the bill. The remaining thirty per cent. was not called in by a resolution of the board; but there was an agreement with the company and stockholders, if not expressed, at least to be implied, that it should be discharged with the bonds, estimates, &c. against the company. That this agreement is made out, see Bank U. S. 12 Wheaton, 64; Bulkly v. Derby Fishing Co. 2 Conn. 252; White v. Derby Fishing Co. 2 Conn. 260; Canal Bridge v. Gordon,

1 Pick. 297; Dunn v. Andrew's Church, 11 Johns. 118; Mc-Gill v. Kaufman, 4 Ser. & Rawle, 317.

5. The agreement to receive the bonds and estimates in payment for stock, was equivalent to a demand of it from the defendants, by the company. It is also an understanding, which amounts to an agreement to procure sets-off against the company, and the company was insolvent, when the bonds and estimates were procured and allowed. In equity, all subscribers for stock, who held bonds, or estimates for work against the company, are discharged *pro tanto*. Decatur Railroad Co. v. Rhodes, 8 Ala. 217; Lindsay v. Jackson, 2 Paige, 582; Nettles v. Elkins, 2 McCord's Ch. 184; Simpson v. Hart, 14 Johnson, 63.

6. The answers of the defendants in each of the cases is responsive to the bill. The defendants are called on to state specfically " what amount of capital stock they and each of them hold in their own names, or in the names of any other persons, what amount they and each of them have paid upon said stock;" this they have fully met in their responses, and if they are sustained, the complainants' case must fail. The complainants no where alledge in their bill, that the defendants had not paid the thirty per cent. before the filing of the bill. They must abide by the case they have made, and must be satisfied with an answer which meets it. Some of the defendants, however, distinctly aver that they had settled with the company before the bill was filed, and all of them can fairly receive that construction. Hughes v. Blake, 6 Wheaton, 472; Daniel v. Taggart, 1 Gill & Johnson, 311; Powell v. Powell, 10 Ala. 909; Strange et al. v. Watson, 11 Ala. 336.

7. The bill is not sworn to, and the answers are, and even if it be held, that the defendants have to prove their answers, still they are a part of the evidence, that the court must look to, in deciding on the correctness of the decree of the chancellor; and when it appears that the bill is not sworn to, and the answers are, and the other testimony in the cause sustains the answer, then the weight of evidence is clearly with the defendants. Moyler v. Moyler, 11 Ala. 621; Hogan v. Bank at Decatur, 10 Ala. 486; Givens v. Tidmore, 8 Ala. 746; Bank v. Marshall, 4 Ala. 60.

CHILTON, J.—1. It is insisted that the chancellor erred in dismissing the amended and supplemental bills; that the amendment is a part of the original bill, and they must stand or fall together.

It is sufficient to reply to this objection, that the previous decision of this cause by this court required them to be done, and that decision must stand as the law of the case. Johnson et al. v. Glascock et al. 2 Ala. Rep. 522; *ex parte* Sibbald, 12 Peters, 492.

2. There was certainly no necessity for a reference to the master to ascertain the time when each of the bonds secured by the trust deed was assigned or transferred to the respective holders, and the consideration for such transfer. This matter was fully decided upon and concluded by the previous decision of this cause in this court, and the chancellor very properly refused the order of reference moved for by the plaintiffs, as the effect of such order would have been to open the whole cause, as though the previous decree had determined nothing.

3. Let us consider the main matter of controversy involved in this cause, which is, are the defendants entitled to insist upon the bonds of the company in their hands as a payment of, or set-off against their indebtedness to the company for stock, which the bill seeks to condemn to the satisfaction of the plaintiffs' judgment.

This claim is resisted by the plaintiffs on several grounds.

1. It is said the bonds cannot be regarded as a payment, inasmuch as they are still held (by some of the defendants) uncanceled; and they cannot be received as sets-off, because they are claimed in the answers *as payments*, and the pleadings are not adapted to the relief which the defendants claim, in this, that there is no averment in the answers that the company is insolvent, and no contract is shown by which they are to be deemed sets-off.

In reply to this objection, we would observe, that the defendants set out the facts which constitute the defence upon which they rely. If, by virtue of the supposed agreement entered into by the company to receive such bonds in payment of stock due the company, the defendants designate their acquisition of such evidence of indebtedness on the part

of the company, *a payment* for their stock, this should not have the effect to bar them of such relief as they might claim consistently with the facts, upon the law of set-off.

The question is not, whether the defendants have given the right name to the defence which they set up in their answers; but whether the facts and circumstances attending the whole transaction amounts to a substantial equitable defence. If they do, and justice has been done by the decree between the parties according to the established mode of procedure in courts of equity, although such proceeding may be liable to hypercriticism, we disregard *matters of* mere form, and cleave to the substance. 13 Ala. Rep. 770 ; 2 Sumner's Rep. 143.

But it is said there is no averment in the answers of the insolvency of the company, so as to authorize the chancery court to take jurisdiction of the counter demands sought to be set off, or established as payments. In reply to this objection, it need only be remarked, that this averment is substantially made by the bill, which states that the complainants have returns of *nulla bona* upon executions issued upon their judgments which are for large demands, *and that the company has no personal, or real property, out of which their executions can be satisfied.* We regard this averment in the bill equally as available for the defendants, as if it had been made by them in their answers. There is no principle better established, and more uniformly acted upon, than that the defendant is entitled to the benefit of all the admissions which the complainant makes by his bill. So, if the complainant admits facts in his bill which constitute a valid defence to the equity which he seeks to enforce, the bill would be dismissed for want of equity. The defendant, however, occupies a more favorable position with respect to the jurisdiction of the court than the complainant. The latter must make out his title to the relief which he seeks by his bill, or to some relief consistent with its allegations. The defendants are praying no relief. They are resisting the claim of the complainants, and it is sufficient if they show that as against them the complainants are entitled to no decree. The complainants must make out such a case as shows the court of equity has jurisdiction; the defendant is only re-

quired to rebut the plaintiff's equity, and may rely upon matters purely legal, if connected with the matters of the bill, for his defence, and may require by cross bill the complainant to answer thereto. See Hume v. Long, 6 Morris, 119; Nelson & Hatch v. Dunn, at the present term. The fact of insolvency we are bound to consider as admitted by the pleadings, as upon that fact depends the jurisdiction of the court as to the matter of the complainants' bill. And we must regard the defendants as defending against the creditors of an insolvent corporation, the whole of whose equitable assets the bill seeks to condemn to the satisfaction of their judgments.

2. The complainants insist that no bonds or estimates for work, which the defendants have acquired since *the filing of the bill*, can be set up by them as a defence. The defendants contend that the *lis pendens* must be considered as dating from the service of the subpœna. We would observe that this question, in the present condition of the record, becomes wholly unimportant, as that furnishes no data from which we can ascertain when the subpœna was served. But as the question is presented, we do not hesitate to express as our opinion of the law, that in all cases where the object is to deprive a party of rights *bona fide* acquired, by affecting him with constructive notice, the *lis pendens* begins from the service of the subpœna, and not from the time the bill is lodged in the register's office. This view is sustained by numerous authorities, which may be found collected in Doe ex dem. Chaudron v. McGehee, 8 Ala. Rep. 570; Boynton v. Rawson, 1 Clark's Ch. Rep. 584; 1 Vern. Rep. 319; 2 Johns. Ch. Rep. 576. In such cases, we see no reason why the rule in equity should be more stringent than that which obtains in the correlative proceeding by garnishment at law. Hazard v. Franklin, 2 Ala. 251.

Guided, however, by the only data which the record furnishes, viz., the filing of the bill, let us turn to the pleadings and the proof accompanying the master's report, and ascertain the equities of the respective parties at that period.

McGehee answered that he owed the railroad company for stock, the sum of $210,000; that he had paid seventy per

centum on that sum, amounting to $147,000. That on the 1st May, 1841, the sum of $62,727 was passed to his credit on the books of the company, which, with the accruing interest, will fully meet and pay off the balance remaining against him, whenever it shall be called in. He further avers, that said amount was so passed to his credit for the purpose, and with the express understanding that it should be so applied in payment and liquidation of the other instalments of stock due from him, as the company from time to time should call them in. The answer is silent as to the consideration of the credit thus allowed, but the proof of Bell, the secretary of the company, shows that it consisted of bonds and estimates held by the defendant against said company. A copy of the account, as it appears upon the books of the company between it and McGehee, is made a part of the proof certified in the master's report. This shows that on the first of May, 1841, McGehee was due the company for stock not then called in, the sum of $63,000, and that there was placed to his credit as of that date, the sum $62,727 83. This witness further states he was unable to find the bonds, &c. which had been deposited by McGehee; that the uniform custom of witness was, when such bonds were deposited, to mark them "paid," and that he canceled them by crossing them with a pen. That interest was also calculated on them up to the time of the deposit, and they ceased to bear interest from that period.

The statement taken by the register from the company books, shows the settlement to have been made the first June, 1841, but interest is calculated only to the first May preceding. Speaking in reference to this exhibit, Bell, the secretary, states that he has no recollection when the bonds and estimates mentioned therein were placed to the defendant's credit, except as the dates appear upon the book. At another place, he observes that the entries may have been made the first June, 1841, or a day or two after that period. That in making his entries, when not made on the day of the transaction, and no memorandum was kept of the date, the witness guessed as near as he could as to the true date. This witness (Bell) sold to McGehee two bonds for about fifty cents in the dollar, but the time when he sold them he is un-

able to state. One of said bonds is due the first June, 1841, but when dated, does not appear. He also states that the estimates for work done on the road, were received by the company on the certificates of the engineers in its employ, and the amount embraced in the account copied from the books, was placed to McGehee's credit to meet the remaining thirty per cent.

B. S. Bibb proves that he sold eleven of the bonds mentioned in the exhibit, to McGehee, between the first and fifteenth May, 1841. These amount to $15,000.

J. P. Taylor proves that he sold bonds against the company to McGehee amounting to five or six thousand dollars, which sale was made before the 15th May, 1841, at which time the witness settled with the company. The exhibit shows the defendant McGehee is credited on the books with five bonds at $1,000 each, and interest to the first May, 1841, $466 66, amounting in the whole to $5,466 66.

The estimates for work done are proven sufficiently by Bell, who states that their dates appear on the amount copied from the books, and which show the work was performed by McGehee before the filing of the bill. But we have carefully examined the proof, and we find no evidence to show that McGehee owned at the time of the filing of the bill, or even before the subpœna was served upon him, the following named bonds, for which the chancellor allowed him credit, viz: Bond No. 9, payable 1st March, 1840, to R. G. Brumby, for $1,000; bond of the Co. to Wm. M. McGehee, payable 1st March, 1840, $1,000; another, payable to Wm. M. McGehee, due as above, for $100; bond to John Sullivan, due 1st January, 1841, for $35 06; bond to W. B. Bell, payable 1st February, 1840, for $1,000; another bond to the same, payable 1st June, 1841, for $1,045. The same may be said as to the item in the account stated thus: "John Goodwin, for this sum on judgment in favor of J. G. pro George Goldthwaite, received 10th June, 1840, $780 63." This item, unexplained, is unmeaning; besides, if it amount to a just credit, we should be advised by the proof when it was acquired, in order that we may determine the defendant owned it before the complainants' lien attached to his indebtedness. It is very clear that there has been allowed to

McGehee in the above items, near $5,000 which is not shown by the proof to have been the proper matter for allowance.

In this connection, we would remark, that none of the defendants state in their answers that they were the owners of these estimates and bonds *before* the complainants' bill was filed, or even before subpœna served upon them. They could have made this matter plain; for the facts came within their knowledge, and they should have done so. Their failure to assert a fact so material to their defence, and which is within their knowledge, while in our judgment it does not deprive them of the benefit of the testimony which has been taken, showing the time when these bonds and estimates were acquired, no objection being made to their answers, nevertheless is a circumstance which makes against them, requiring more stringent proof of what they fail to aver.

These bonds, &c. are set up in avoidance of their liability for the stock purchased by them, and for which only partial payments have been made. There is no charge in the bill respecting their acquisition by the defendants, hence the averments made in the answers, setting them up by way of defence, cannot be regarded as responsive to the bill, and must be proved. Gres. Eq. Ev. 288; 2 Ala. Rep. 215; 4 Ib. 60; 2 Stew. Rep. 280; 5 Verm. Rep. 279; 8 Pick. Rep. 113; 2 McCord's C. Rep. 156; 1 Munf. Rep. 373; 2 Bibb, 38; 2 Johns. C. Rep. 89; see also, Silver's adm'r v. Hedges, 3 Dana's Rep. 439.

From this view, it also follows, that the defendants have not sustained any injury by the reception of the proof by the register, in taking the account. In the absence of the proof thus taken, their answers would be unsustained by any evidence, and the court might well have decreed against them for the full amount of their indebtedness, disregarding their counter claims. True, McGehee says a certain amount was passed to his credit, on the 1st May, '41, but as we have said, he states no consideration for such credit. Such loose and obscure statements cannot be aided by intendment, so as to dispense with proof showing the justice of the defence, and making its rejection inequitable. Such credit, if made

Goodwin et al. v. McGehee et al.

without consideration, could be of no avail as against a subsisting creditor of the company.

James M. Hill proves, that the bonds which defendant, Scott, insists upon, were sold by the witness to him, in April, 1841, so that there can be no controversy in respect to their allowance, so far as the facts are concerned.

As to Taylor, Bell states that there was passed to his credit on the books of the company, on the 1st day of June, 1841, the sum of $4,159, and on the 5th July, '41, the further sum of $3,392 88. The credits remained thus until the 5th September, 1845, when a settlement was made. The credits were merely entered for the principal of the bonds which were deposited, and which bore interest from the 1st of March, 1840. The interest on the bonds first deposited added to the principal, would, according to this witness, have paid the thirty per cent remaining due from Taylor to the company for his stock. It appears that these bonds were given by the company, for work done on the road, and were uniformly received by the secretary of the company and credited in payment of stock. The directory having access to the books, and the matter being explained to them by Pollard, the president, made no objection to the credits.

Wm. Knox proves that he sold these bonds, which Taylor claims as an extinguishment of his liability, to Taylor, on the 26th day of May, 1840; that the bonds, with interest up to the time of the sale, amounted to $6,965.

Pollard, the president of the company, testifies, "that it was the custom of the company, when the stockholders came forward and directed it, to receive the claims against the company in payment of calls or assessments of stock, or to leave the claims to their credit, subject to future calls by the company, and this was recognized by the company, or directory, and not repudiated by them." This witness further states, that previous to June term, 1841, Taylor told him he had procured the bonds to pay up the 30 per cent. remaining due for stock. That on the 5th June, 1841, witness, was notified of the filing of the bill, and on that day communicated the fact to the directory, as also the deposite of the bonds by the defendant, Taylor, and the object of

said deposite. That the directory made no objection to the receipt of the bonds in this way.

This evidence, we think, very satisfactorily shows, that Taylor was the owner of the bonds before the exhibition of the bill.

As to the bonds set up by the defendant Cowles, the proof clearly shows, two of them were purchased on the 22d May, 1840, and as to these he was properly held entitled to credit upon his stock, but the chancellor erred in declaring the proof established, that Cowles owned the bond numbered 78, when the bill was filed. Knox proves that he sold him this bond on the 28th June 1841; this, connected with the fact, that he fails in his answer to aver that he did hold the bond before the service of subpœna, makes out a case against him, which is not countervailed by the other proof in the cause. The president and secretary of the company merely depose to entries upon the books, which are shown to have been sometimes made after the transaction occurred, and the dates of the deposites guessed at. The witness Ball, states that he had these bonds some three days before filing the answer of Cowles, which was the 29th June, '41, and at that period they were not marked *paid,* or cancelled, as the secretary states was his custom to mark them, when deposited in payment for stock. In the absence of other proof, we think this bond, (No. 78,) should not be allowed, especially as Jackson, the book-keeper of Knox, proves the correctness of the entry, stating the sale of it to Cowles to have been on the 28th June, 1841.

The answer of Harris admits the indebtedness with which the decree charges him, and the correctness of the decree against him, depends on whether he should have been allowed to file his supplemental, or amended answer. This point we will consider when we come to speak of the assignment of errors on the part of the defendants.

3. It is argued by the plaintiffs, that the defendants cannot in any event be entitled to deduct from their indebtedness for stock an amount greater than the cost of the bonds and estimates for work which they hold.

This is a question not entirely free from difficulty. It is perfectly clear, that the corporation could not, by resolution

Goodwin et al. v. McGehee et al.

or otherwise, give away the effects belonging to it, to the prejudice of creditors; and it is equally clear to my mind, that any arrangement entered into between the corporation and its stockholders, *with a view of defeating the claims of creditors*, by which the stockholders were allowed, after it was ascertained that the corporation was insolvent, to purchase up depreciated and repudiated claims; and thus to extinguish their indebtedness for stock, which was the only fund to which the creditors could resort for payment, would both in law and in equity, be nugatory and void.

In Slee v. Bloom, 19 Johns. Rep. 478, the trustees or directors, had passed a resolution giving to the stockholders the privilege of forfeiting their stock, by paying thirty per cent. by a given time, which sum of thirty per cent. was insufficient to pay the debts due from the company. Spencer, C. J., in delivering the opinion of the court of errors, says, "I do not stop to inquire by what means this resolution was obtained; I pronounce it to be against the fundamental principles of law and equity, legally fraudulent, and thefore void and inoperative." That case however, is not as the counsel supposes, analagous to the case made by the record before us. In that, there was but one creditor; he was present, protesting against the resolution, and advised the trustees that the thirty per cent would not pay his demand. Besides, there was, by that resolution, a discharge of a portion of the debts owing from the stockholders. In this case the company having various debtors, as well as creditors, merely determine, that if the evidence of the debts due from it should be obtained by its debtors, and filed for cancellation, the one should extinguish the other. We see nothing unlawful in this arrangement. There is a total absence of proof, to show that any fraud upon the creditors of the corporation was contemplated, or that any effort was made to decry and depreciate in value the demands against the company. Indeed such an arrangement was well calculated to enhance the value of the bonds issued by the company, by increasing the demand for them; they were at least made equivalent in value to the stock. The rights of creditors were in no way injuriously affected. They still retained the option to sell, or to sue upon their demands. If the stockholders had paid the remain-

der of their indebtedness in money, instead of purchasing bonds, it would have been the privilege of the company to have paid the money to the bond-holders, preferring such as the company chose to pay.

Again—by thus balancing its debts against its credits, no part of the stock or effects of the company is released. And in this particular the case is mainly distinguishable from that of Slee v. Bloom.

There is nothing in the charter of the company, nor in the law of the land, neither is there any principle growing out of the relation which the defendants occupy towards the corporation, which forbids their buying in the bonds and estimates, so as to extinguish their liability, if they are guilty of no fraud, or unfairness, in the transaction.

The creditor, whose bonds and estimates of work have gone towards the extinguishment of the liability for stock, had, before any lien attached, as much right to be paid in full as the complainant. That he has sold his claim for less than its nominal amount, or even for less than its actual value, is a matter between him and the purchaser, and in which the complainants have no concern. Neither is there any thing inequitable in the arrangement, so far as the defendants are concerned ; for the stock for which they have paid is but a just equivalent for the cost of the bonds.

We think that the proof made by the witnesses, Bell, Pollard, and Scott, satisfactorily establishes an agreement on the part of the corporation to receive bonds and estimates in discharge of the 30 per cent remaining due for stock, and that such agreement existed before the filing of complainant's bill. The uniform practice of the corporation to receive and allow them, taken in connection with the other testimony, places the matter, we think, beyond reasonable doubt.

4. But it is urged as a fourth objection to the allowance of the set off, that the defendants should have filed cross bills. That they can pray nothing in their answers but to be dismissed the court, &c.

There can be no doubt that a cross bill may be sustained for the purpose of obtaining an equitable set off. 4 Met. R. 104; 1 Hop. Rep. 239; Danl. Ch. Pr. 1744. And were the defences here set up purely of that character. Were it ne-

Goodwin et al. v. McGehee et al.

cessary for the defendants to have a decree against the corporation, allowing them to set off their cross demands, so as to extinguish the indebtedness sought to be condemned by the plaintiffs to the payment of their judgments, I should hold that a cross bill would be indispensable to the relief. Such however, is not the category in which the defendants are placed. They have already been allowed credit for their demands by the company. They have no further relief to ask respecting them, and having thus extinguished, *pro tanto*, or wholly, the demands against them, they ask to be discharged from the liability to the complainants, and dismissed the court. In such case, it is very clear no cross bill is needed, unless as a means of defence in order to obtain a discovery.

5. We think the objection that the corporation had no power thus to cancel the sums due for stock, wholly untenable. The power to set off one debt against another, in the absence of any express grant of authority conferred by the charter, would seem necessarily to follow from the authority to collect and pay the debts. If the same person is both debtor and creditor, the law does not require the useless ceremony of paying the money, that it may be immediately refunded, when by the mutual consent of the parties, the same result is attained by the extinguishment of both demands.

Having disposed of the points raised in this court by the plaintiffs below, we come next briefly to notice the errors assigned by the defendants.

1. It is insisted on the part of Harris, that he should have been allowed to file his amended answer. His original answer admits his indebtedness to the company, but by the amendment, he avers a forfeiture of his stock, and a sale thereof by the company, under the forfeiture, before the complainants obtained their judgment, which was the first Monday in March, 1840. The amendment further states, that he was not informed of the sale of his stock until the 7th day of December, 1847. The original answer, which was filed some seven years before this amendment was offered, states, that this defendant had only paid 50 instead of 70 per cent. upon his stock, and that the last payment made by him, was on the 13th April, 1840.

Two affidavits are filed, made by the counsel for Harris to sustain the application. One of them states, that before writing the answer, he called upon Bell, the secretary of the company, for information in regard to Harris's subscription for stock, and received from said secretary the amount of it given by the first answer; that he was not informed said stock had been forfeited and sold.

The other affidavit states, that the defendant received his first intelligence as to the forfeiture in November or December, 1847; that on the same day he wrote to his client, who resided some seventy miles distant, giving him information as to the fact; that in a few days thereafter the amended answer was prepared.

Under these circumstances, both the register and the chancellor refused the application to amend the answer. We feel constrained, however harshly the rule may seem to operate in the present case, to decide, that in our opinion they properly overruled the application.

The practice of allowing such amendments, changing the whole character of the defence, or rather making full defence, whereas the original answer made none, after a lapse of some *seven years*, and upon the above showing, would lead to great delay and inconvenience, not to say incalculable mischief. It would be difficult to make any calculation as to the termination of a chancery cause, if, after the lapse of so many years, the parties were allowed, by amendments, to make new cases, and introduce new issues.

We find no authority which sustains such practice, or sanctions the application here made.

It is said that where a defendant seeks to put on record an addition prejudicial to the complainant, the indulgence is only to be granted under very particular circumstances. Edwards v. McLear, 2 Ves. & Bea. 257.

In Wells v. Wood, 10 Ves. 401, the defendant made an application to amend his answer, stating in an affidavit, that from circumstances which had occurred to him since the filing of his said answer, he was satisfied he should have admitted a fact which he had denied. Lord Eldon said, the question as to the amendment is always applied to the discretion of the court in the particular instance, and

that in the case before him the affidavit was not sufficient; that it ought to have stated, that the defendant, at the time of answering, did not know the circumstances upon which the application was based, *or any other circumstances upon which he ought to have stated the facts otherwise.*

So in Curling v. Townsend, 19 Ves. 628, the same learned chancellor said, he "dare not in such case (let the record be what it may) lay down a principle that would form a precedent for permitting an answer, after the lapse of two years, to be altered, in effect from one end to the other."

It has also been held, that an application will not be entertained to file a supplemental answer, changing the whole ground of defence set up in the first answer. Tidsdale v. Bowyer, 7 Sim. 64; 2 Bland, 261; 8 Ves. 79, n. a, and the English and American authorities there collated.

In the case before us, the defendant, who is a member of the corporation, and presumed to be cognizant of its regulations, rests perfectly supine, caring, it may be, nothing for his stock, and making no preparation for his defence, until after the lapse of some seven years he is roused from his apathy by intelligence from his counsel, that his stock was forfeited and sold some year or more, before the bill was filed. He now pleads his ignorance of the facts which ordinary diligence required him to have ascertained, as a reason for the unusual interposition of the court. The established rules of practice forbid that we should aid him. It is true, the rules in respect to amendments may not be so rigid in this country as in England, but we have found no authority which yields such indulgence as is here asked. See the decisions of this court upon the subject of amendments in chancery proceedings, referred to in McKinley v. Irvine, 13 Ala. Rep. 707, the tenor of which fully accords with the view we take of the amendment proposed in this case.

2. There was no error in allowing the proof to be taken by the register. There is no necessity for an order to enable the master, to whom it is referred to ascertain the facts of the case, to receive the testimony of witnesses pertinent to those facts. Perhaps it would be irregular in the master to examine a witness in chief, who had been examined before publication, or to examine the parties, or to examine a

witness previously examined on the same matter, without an order for that purpose. Remsen v. Remsen, 2 Johns. Ch. R. 495. But no question of this kind is raised here. The order of reference is general, and the master is required to examine the parties, and to have the books and papers before him. Aside from this view, however, the defendants, as we have shown, have sustained no injury by the proof, as without it, the matter of their defence falls to the ground, being irresponsive to the allegations of the bill. As to taking additional proof upon a general order of reference, see Kirkman v. Van Lier, 7 Ala. 217.

The proof taken upon the amended and supplemental bills, so far as it was applicable to the issues made by the pleadings in the original bill, should have been received, but upon an examination of it, we do not see that it affects the case made by the original bill, or that either party could have been damnified by its rejection.

3. It is insisted, finally, on the part of the defendants, that the record shows the stock which they are required by the decree to pay to the complainants, really belongs to B. S. Bibb. That it passed to him under his purchase at the sale made by the trustees, in virtue of the deed of trust executed by the company, as brought to view in the amended and supplemental bill, answers, and proof.

This point must be considered as *res adjudicata* by the previous decision of this court, 11 Ala. Rep. 455, *which directs an account to be taken of this stock,* upon an investigation of the whole case made by the original, amended, and supplemental bills, answers, exhibits, and proofs. The effect of that decree would be to estop Bibb, who was a party to the proceeding, from setting up claim to this stock, as he made no claim to it in his answer to the bills. But aside from this, the proof made by him before the register, as also the action of the company in allowing the bonds and estimates transferred by him to McGehee, after the alledged purchase by him, in extinguishment of the stock, he being a member of the company, apprised of the credits, and making no objection, shows he has no claim upon such stock by virtue of the alledged purchase.

It results from what we have said, that there is no error in

the decree of which the defendants shall have advantage. But, as we have seen, the court erred in the amount of the decree rendered against the defendants, Cowles and McGehee; upon the proof certified by the master, the decree as to them is reversed and remanded, that the matter of account may be referred back to the master, with permission and direction to receive and certify to the court the proof which the parties may adduce.

Let the defendants pay the cost of this suit.