GODWIN *et als. vs.* McGEHEE *et als.*

1. When a bill is filed by the creditors of a Rail Road Company against its debtors, for the purpose of subjecting the money in their hands to the payment of the debts due the complainants, and such debtors do not offer to bring the money into court, but engage in a protracted litigation respecting it, and insist upon their right to retain it, both as against the complainants and the company, they are properly chargeable with interest upon the balance found to be due from them to the company.

2. In general, a court will not decree interest on a balance unless it is specially asked for in the bill, but this rule applies only to interest due at the time the bill is filed. When the interest accrues subsequently, it is the practice of the court, upon further directions, to order that the interest be computed, although there is no prayer in the bill to that effect.

3. W. M. placed in the hands of A. M., who was bound as surety for him on several debts, certain bonds of the Montgomery R. R. Company, with the understanding that A. M. should endeavor to collect them and should apply the proceeds to the payment of the debts for which he was bound as surety. G. and other judgment creditors of the R. R. Company afterwards filed a bill against A. M.. and other stockholders, for the purpose of condemning their indebtedness to the company to the satisfaction of complainants' judgments against it, the company being insolvent. A. M., before the service of the subpœna upon him, paid some of the debts for which he was bound as surety for W. M.; and after he had been served with process, the whole amount of the bonds assigned to him by W. M. was passed to his credit on the books of the company. A settlement of their accounts was afterwards made between A. M. and W. M., in which A. M. accounted for the bonds which he had received, at their market value, fifty cents on the dollar. *It was held,*

   1. That A. M. was entitled to a credit on his indebtedness to the company, of the amount which he had paid as surety for W. M. before the service of the subpœna upon him.

   2. That his right to retain, as against the complainants, only extended to the *amount actually paid by him,* and was not affected by the depreciation in the market value of the bonds, or the subsequent settlement between him and W. M.

ERROR to the Chancery Court of Montgomery. Tried before the Hon. J. W. Lesesne.

GODWIN *et als.,* who were all judgment creditors of the Mont-

gomery Rail Road Company, after exhausting their legal remedy against the Company by executions returned "no property found," filed this bill against Abner McGehee, T. M. Cowles and others, stockholders in the Company, for the purpose of subjecting their indebtedness to the Company to the satisfaction of complainants' judgments. The Chancellor dismissed the bill, but his decree was reversed by the Supreme Court, (11 Ala. R. 437,) and the cause was remanded that an account might be taken of the indebtedness of the several defendants to the R. R. Company, in accordance with the principles settled by the decision. The account was taken, the master's report was confirmed, and the cause was again brought to the Supreme Court, for the purpose of reviewing the Chancellor's decision on the several exceptions which were taken to the master's report. The cause was again reversed and remanded that the account might be retaken as to the defendants, Cowles and McGehee, (15 Ala. 232.) The account was retaken, and each party being dissatisfied with it, the cause was brought to the Supreme Court the third time, on cross assignments of error.

All the facts of the case may be gathered from the previous reports of it, (11 Ala. 437; 15 ib. 232,) and the additional proof as to the disputed items of account is so fully detailed in the opinion that its repetition here would be unnecessary.

ELMORE and WATTS & JACKSON, for complainants:

1. There was no error in charging the defendants interest on the amounts ascertained to be due by them to the R. R. Company.

Interest follows as an incident from the time the principal ought to have been paid, i. e., from the time suit might have been brought for the principal.—7 Wend. 109; 10 ib. 96.

An action could have been maintained by the R. R. Company after sixty days from the call provided for in the charter.—3 Ala. 660; 4 ib. 70.

The provision in the charter authorizing the Company to declare the stock forfeited on failure to pay after notice, is merely a cumulative remedy, and does not destroy the common law right of action.—See authorities supra, and the authorities there cited.

If the Company had brought suit against the defaulting stockholders, there can be no doubt but that they would have been chargeable with interest, after sixty days from the time of the

call. Now, the complainants, by filing their bill to subject the uncalled for stock to the payment of their debts, are subrogated to the rights of the company, and are only doing what the company ought to have done, to wit, compelling the stockholders to pay the stock for the benefit of creditors. It will be seen by reference to the decree, that interest was charged after the lapse of sixty days from the service of the bill.

When money, in the hands of a third party belonging to a defendant in attachment or judgment, is sought to be condemned by a creditor of such defendant, either in law or equity, if such third party refuses to pay, or in any manner contests the right to have the money applied, or if such third party admits the right, but does not bring the money into court and submit it to the decree of the court, he will be compelled to pay interest.— 7 Ala. 217 ; 3 Sandf. Ch. R. 466 ; 1 Dana 338 ; 1 Barbour's Ch. R. 82.

By the report of the Register this money is ascertained to have been in the hands of the defendants, McGehee, Cowles and Harris, at the time of the filing of the bill. McGehee and Cowles deny that they owe, and contest complainants' right to have it applied as sought, and Harris does not bring the money into court and submit it to the decree of the court for application. They are, therefore, all properly chargeable with interest.

As to Cowles' liability on the thousand dollar bond. The proof taken before the register the last time does not alter the effect of that taken at the first reference. This court held when this case was previously before it, that Cowles should be charged with it. —15 Ala. 246.

2. The chancellor erred in allowing Abner McGehee credit for the bonds received from William McGehee.

Because the report and proof show that Abner McGehee, at the time of filing and service of the bill upon him, had no absolute interest, either equitable or legal, in the bonds and estimates. He held them merely as the agent of Wm. McGehee. In order to make them legal sets-off, he must have had some absolute legal interest.—Minor's R. 7 ; 7 Cow. 480 ; 7 ib. 469; 10 Paige, 319; Barbour on Set-off 195 ; 2 Ala. 675; 3 ib. 256 ; 11 ib. 787, and authorities there cited ; 16 East. 130; 8 ib. 368. To make these sets-off in equity, he must have had some abso-

lute equitable interest.—See authorities, *supra*—see Barbour on Set-off, 194; 1 Paige, 289; 7 ib. 208. Now what interest did Abner McGehee have in these bonds and estimates at the time the complainants' bill was served upon him? True it is, he had them in possession, and had had them for more than six months. But mere possession is not ownership. Did he have ownership, property, in them at the time he acquired the possession? To determine this, we must look at the terms of the contract, by which he got possession of them, between himself and William McGehee. By that contract he received the bonds and estimates, promising " to try to collect them and pay" certain debts with the proceeds. On these debts Abner was the security of William. He held them merely as the agent of William at most, as collateral security to indemnify himself. He is then not the owner. He never collected them before the filing and service of complainants' bill. He does nothing with them to give him an ownership, unless the payment of the debts provided for in the contract between him and William, gives him an additional right to use them as his own; and can an agent, by a payment for his principal, acquire the right to appropriate his principal's goods in his possession to his own use? This he clearly could not do without the assent of his principal. Here the principal disputed the right of the agent to do this. If he ever gave any assent to the appropriation, it was given at the time of the arbitration, which was in 1843, two years after the filing and service of the bill. This subsequent ratification cannot relate back to the time of appropriation by Abner, so as to defeat the rights acquired by complainants by the filing and service of their bill.—7 Ala. 800, and authorities there cited to this point; also, Story on Agency, §§ 245-6-7 & 440.

The payment of the debt would give to Abner McGehee the right to sue Wm. McGehee for the money paid, and if William was insolvent, possibly in equity he might be entitled to use these bonds and estimates as his own, and thus they might become good as an off-set to the payment of his stock. But there is no proof to show that William was insolvent. The payment of the debts and the insolvency must concur before the off-set could be allowed. Now did Abner pay the debts before the filing and service of the bill? The proof shows that he paid the Mosely debt. But, although it shows that at some time before the

arbitration in 1843, be paid the Baldrick debt, it does not show that it was paid before the filing or service of the bill. It was incumbent upon Abner to show this, to make out his right to the set-off.

The proof nowhere shows the payment of any other debt. On the contrary, it shows that the other two debts were not paid by Abner. As there was a full settlement in 1843 of these matters, and at said settlement William was allowed fifty cents in the dollar on these bonds and estimates, and at such settlement he fell in debt to Abner only about $900, it is very clear that Abner never paid the other debts provided for in the contract with William.

Now giving Abner credit for the Mosely and Baldrick debts, they amount to only about $4,800. Yet he is allowed credit against these complainants and the R. R. Company for $6,701, near two thousand dollars more than he has ever paid, or ever will pay on account of Wm. McGehee. It thus clearly appears that Abner McGehee, without including the two bonds amounting to $1,100, was fully indemnified for all that he was compelled to pay for William. There can be no sort of equity in permitting him to use these two bonds, ($1,100,) as sets-off against complainants; for he had no sort of interest in them. If these two bonds were held originally as collateral security, they could not be sets-off.—1 Watts & Serg. 418; 4 How. Miss. 370; 1 Gilman, 649.

BELSER & HARRIS, contra:

1. There is error in the decision of the Supreme Court, in which it reverses the decree of the Chancellor, and charges McGehee with the two bonds for $1,100, and interest on them, &c.

The evidence shows an agreement between the corporation and the subscribers for the stock of the company, entered into before complainants' bill was filed, to receive the bonds of the company obtained by them, in payment of their stock. And this agreement, independent of the insolvency of the corporation, shows the decision of the court to be wrong. None of the previously adjudged cases place McGehee's equity on the ground of having the bonds placed as credits on the books of the company, before the bill was served on McGehee. In fact, they repudiate this idea. McGehee's true case is, that he held the

bonds before complainants' bill was filed, under an implied agreement that they should go in discharge of stock to their full amount, independent of the market value of them, and that the company is insolvent. But the first ground is valid without the addition of the last.—2 Paige 582; 2 McCord's Ch. 184; 14 John. 63; 8 Ala. 217; 15 ib. 233; 12 Wheat. 69; 2 Conn. 260; 1 Pick. 297; 11 John. 118; 4 Ser. & R. 317.

2. McGehee should only be charged with the two bonds for $1,100, with interest from sixty days after the filing of the bill, or the service of the subpœna on him. The two bonds for $1,100 are the only errors complained of by the complainants' solicitors, and the rule is well settled that they cannot get more than they ask in their assignments.

3. The amount of the estimates received by Abner McGehee from William McGehee is about $6,700. The amount paid out by him to Moseley and Baldrick is about $4,800, the Moseley debt, of $4,300, being paid prior to the filing of the bill about five months. The bonds for $1,100, with interest from sixty days after the service of the subpœna, do not amount to as much as the difference between the $7,500 and the $4,800, with interest, as settled by the court.

CHILTON, J.—Since this cause was before us at a previous term, (15 Ala. 232,) it has been re-tried in the court below, and is again before us upon cross assignments of errors, both parties being dissatisfied with portions of the chancellor's decree. We will first dispose of the errors assigned by the defendants to the bill.

1. It is insisted for them that the chancellor erred in charging them with interest on the amounts ascertained to be due from them to the Rail Road Company for stock.

According to the provisions of the charter of the company, if the defendants to the bill had failed to pay within sixty days after the stock was called for, the company could have sued for and collected it. The right to declare the stock forfeited was clearly but a cumulative remedy given by the charter to the company against defaulting stockholders. If, then, a call had been made, and these defendants had made default, and suits had been instituted by the company, we apprehend there would be no question but that they would be bound to pay interest on

Godwin et als. v. McGehee et als.

their bonds from the time they were payable, namely, from the expiration of the sixty days from the date of the call. The complainants, however, by their bill, have acquired a lien upon this stock, so that the company cannot control it, and the defendants would be bound, at their peril, to disregard any call which the company might make after this lien attached. The company and its debtors having been brought before the Chancery Court, that court became the rightful repository of the fund until the controversy concerning it was ended, when by its final decree, the same would be ordered to be paid out according to the equitable rights of the respective parties.

The fund being called for in the Court of Chancery, it was the obvious duty of the defendants who desired to rid themselves of the payment of interest upon their unpaid bonds, to have tendered the money in court, and, if instead of doing so, they engage in a protracted, expensive, but fruitless litigation concerning it, and hold on to it until obtained at the extremity of the law, it is but equitable and right that they should be required to pay interest. The parties knew, or might have known, the amount of their indebtedness. They were likewise bound to know that after the service of the bill upon them, no demand which they might acquire should be allowed to defeat the right of the complainants to a condemnation of the amounts due from them to the company to the payment of the complainants' judgments. In other words, that the state of the accounts existing between them and the company at the time the bill was served upon them, which brought actual knowledge to them of the pendency of the chancery proceeding, must be that upon which the court would determine their liability. And knowing this, their efforts to obtain credit for demands against the company, which were acquired by them after they knew of the pendency of this suit, instead of furnishing a reason for exonerating them from the payment of interest, constitutes a strong inducement for charging them with it.

It is, moreover, manifest that this case is readily distinguishable from those in which it is necessary to go into a protracted, intricate accounting, in order to ascertain the true balance between the parties.

In T. & J. Kirkman et al. v. Vanlier et al., (7 Ala. 217,) it was held by our predecessors, and we think very correctly, that

Godwin et als. v. McGehee et als.

Where a bill is filed for the purpose of subjecting a sum of money in the hands of a third person, to the payment of a debt due the complainant, if such person, though enjoined from using it, does not offer to bring it into court, but insists upon his right to retain it, both as against the complainant and his debtors, he will be charged with interest. This decision is well sustained by the authorities cited in it, and as the case before us is clearly brought within its influence, we deem it unnecessary to cite further authority to the point.

But it is supposed that the frame of this bill will not justify a decree for interest, as it contains no specific prayer for the same. In general, a court will not decree interest on a balance, unless it is specially asked for in the bill, but this rule applies to interest due at the time the bill was filed. Where the interest accrues subsequently, it is the practice of the court, upon further directions, to order the interest to be computed, although there is no prayer in the bill to that effect. In Turner v. Turner, (1 Jacobs & Walker, 43,) Sir Thomas Plumer, Master of the Rolls, said, "for although the bill does not pray for interest, and there is nothing on the face of the pleadings to affect the executors with it, yet, it is, I think, now open to the court to charge it against them." And as to bringing the money into court, he says: "It was urged that no application was made for the payment of the balance into court, but the defendants should have brought it in without any." See also Loyd v. Jones, 12 Simons, 491, and Daniel's Ch. Pr. 439; ib. 1507.

Having disposed of this objection to the decree, which is taken by all the defendants, let us turn to the alleged error, which is severally assigned. We have carefully examined the additional proof taken by the register upon the last reference as to the bond of the company No. 78, which Mr. Cowles insists should be allowed as a credit upon his stock. The testimony of Mr. Gilmer tends to weaken to some extent the evidence adduced against him as to the time he acquired this bond, but his memory is unaided by any memorandum in writing made at the time, and besides, he cannot identify this as the bond deposited by Cowles with Bell to be credited on his stock. Without stating the testimony previously taken, which will be found in 15 Ala. 246, we feel constrained to hold that the proof clearly preponderates in favor of the master's report, and shows that this bond was

purchased from Wm. Knox on the 28th day of June, 1841, near-
ly one month after the bill was served upon the defendant Cowles.
Consequently, the Chancellor very properly refused to allow it
as a credit upon the amount due from him for stock.

This disposes of the errors assigned by the defendants to the
bill, and shows that the Chancellor did not err in the matter of
their objections to his decree.

Next we come to consider the question raised by the assign-
ment of errors on the part of Allen et al., the complainants in
the court below.

It appears that the subpœna in the cause was executed on
Abner McGehee on the 26th day of May, 1841, and the regis-
ter reports that said McGehee became the owner of three of the
bonds insisted on as credits by him, two of them for $1,000 each,
and one for $100, on the first day of June, 1841. According to
this report these bonds could not have been allowed as sets-off
against McGehee's indebtedness, but it was excepted to as to
these items, and the chancellor sustained the exception and al-
lowed McGehee the benefit of them.

The evidence in regard to these two items shows that on the
5th day of November, 1840, William McGehee, being the ow-
ner of these bonds, with other demands against the company,
amounting in all, with interest to 1st November, 1840, to the
sum of $6,701, and being indebted to Daniel Moseley in the sum
of $3,000, to John Chaney in the sum of $900, to T. Baldrick
in the sum of $500, and to the bank in the sum of $2,300,
amounting in the aggregate to $6,700, (for the payment of which
debts it appears that Abner McGehee was the security for Wil-
liam,) placed the above bonds and estimates in the hands of Ab-
ner, and took his receipt in the following words : " Received,
5th November, 1840, of William McGehee, the above demands,
which I promise to try to collect and pay the following writs and
executions, viz." Here follows a description of the debts above
designated. It appears that the demand due Moseley, amount-
ing to $4,177 15, besides costs and commissions, was paid by
Abner McGehee to the sheriff of Montgomery County, on the
1st day of January, 1841.

The Baldrick debt was also paid by him for William Mc-
Gehee, but at what time does not appear. The matter between
William and Abner McGehee stood thus until the Fall of 1842,

when, according to the testimony of William, Abner told him that he had caused said bonds and estimates to be passed to his (Abner's) credit on the books of the Rail Road Company, but that he (William) could take the amount of said bonds, &c., in stock in said company, or if he preferred it, he would give William other bonds against said company. Nothing, however, was done in regard to the matter, until, in 1843, William being dissatisfied with the disposition made of the bonds and estimates by Abner, the parties agreed to submit the matters of difference between them to the adjustment of arbitrators, by whom it was awarded that Abner should account to William for said bonds and estimates at the rate of fifty cents on the dollar; and upon a settlement based upon such arbitration and award, William fell in Abner's debt to the amount of about $900.

It appears that the settlement or entries upon the books of the Rail Road Company, by which these two bonds were placed to the credit of Abner McGehee, was made on the 1st of June, 1841, after the service of the subpœna in this case upon him. It no where appears that he had any authority to use these bonds in settlement of his indebtedness to the company, unless such authority can be deduced from the receipt above spoken of, coupled with the subsequent payment by him of the Moseley and Baldrick demands.

We may then leave out of view the settlement, since we must look to the rights of the parties and their equities, growing out of the relation which they occupied towards each other at the time this bill was filed. The question then is, what interest had McGehee (Abner) in these two bonds at the time the lien of the complainants attached to his indebtedness to the R. R. Company?

It is clear that he had no legal interest, for there was no assignment of the bonds to him. Had he an equitable interest, and by this we mean such an interest as a court of equity would protect and enforce? He was certainly more than a mere collecting agent for William, as the written receipt upon its face would indicate. In arriving at the intention of the parties, we should construe the obligation imposed by the receipt with reference to the surrounding circumstances attending its execution, and the object intended to be effected by the parties. Abner was the security for William, and to provide the means to meet the demands so secured, William placed these bonds, &c., in his hands

to collect and pay them. It then became his duty to collect them as it was his privilege to apply the proceeds to the payment of the debts specified, for his own protection and indemnity. It was an agency coupled with an interest which William could not have revoked or affected, without first having paid the debts designed to be settled out of the proceeds. If Abner paid the debts due to Moseley and Baldrick before collecting the claims thus placed in his hands, he became subrogated to the rights of the creditor thus paid off, and retained the right to indemnify himself out of the proceeds of said bonds and estimates. But the payment by the surety would not give him the absolute property, either in law or in equity, to these bonds. They still belong to William, charged with Abner's right to collect and reimburse himself the amount paid. And, notwithstanding this arrangement for his indemnity, Abner had the right, immediately upon the payment, to sue William, and recover at law the amount which he had paid. This right, however, to sue upon the demand at law, does not affect his remedy to rely upon the security which he has; and whether William be solvent or insolvent is immaterial in this view of the case. The Rail Road Company is shown to be insolvent, and this proceeding in equity to collect the demand which Abner owes to the company but subrogates the complainants to the rights of the company in respect to such demands. The company being insolvent, it would be clearly inequitable to allow it to collect the whole of Abner's indebtedness to it, while he holds against it the right to reimburse himself the amount he has paid for William McGehee out of collections to be made upon these claims. As to all the debts mentioned in the receipt, except those due Moseley and Baldrick, we must presume William McGehee paid them, as there is no proof that Abner paid any of them, and no charge for such payment appears to have been brought up on the settlement based on the arbitration. Nor does it appear that Abner claimed any amount on account of the demands for which he was originally bound as security. In regard to all of the demands which William had placed in his hands, Abner was the mere collecting agent of William, except as to the amount required to reimburse him the sum which he paid as his security, with interest on that sum. As to this amount he held an equitable lien, and if the company or the complainants in the bill had re-

Godwin et als. v. McGehee et als.

imbursed him the amount he had thus paid, he would, in respect of the balance, have had no right to insist upon it as an off-set to the amount due from him to the company ; for, as to the remainder, he would have had no personal interest whatever. In equity, then, he can be said to be the owner only of so much of the demand as he had the right, had the whole been collected, to appropriate to his re-imbursement. And to this extent, under the previous decisions of this court, we think the court of equity might well afford him relief, (T., C. & D. Rail Road Company v. Rhodes, 8 Ala. 206, and cases cited ; Donalson's Ex'r. v. Pope & Posey, 13 ib. 770 ;) but further than this we think the court should not have gone.

But it is insisted that the amount paid by Abner McGehee to Moseley and Baldrick was more than equivalent to the entire market value of the bonds and estimates placed by William in his hands, and that having treated them as his own in procuring a credit upon his stock by the consent of the company, he is only to be charged the market value of these claims. Such too appears to have been the principle upon which the arbitrators acted in 1843, for they allowed William only a credit, estimating said claims at the rate of fifty cents on the dollar, notwithstanding Abner had used them at par in the payment of his debt to the company.

It must be borne in mind that the complainants' lien upon Abner McGehee's indebtedness to the company attached *before* the allowance by the company of these bonds, &c., as a credit upon it, and consequently no arrangement which they may have subsequently made could defeat the equitable rights of the complainants. To divest the case of the embarrassment which these subsequent proceedings throw around it, we may regard Abner McGehee in possession of the bonds, &c., handed him by William, and that he is summoned to pay to the complainants what he owes to their debtor, the company. Let us suppose that he had brought the amount he was due in money into court, with the claims of William McGehee which he held, and the evidence of so much paid by him on the demands which these claims were intended to secure. The court, upon an inspection of the receipt which Abner gave, at once determines that these claims were designed for his indemnity and protection against these debts for which he is surety, and orders that he shall be fully indemni-

fied by being reimbursed any sums which he may have paid, out
of his indebtedness, or, in the case supposed, out of the money
which he brings into court. When this is done, and the balance
of the money is appropriated to the complainants, it is manifest
that complete justice will have been done between all the parties.
Abner McGehee's equity extends to his indemnity, no further.
It enables him to resist the payment of the amount on his in-
debtedness, which he has paid on the demands mentioned in the
receipt to William McGehee, with the interest on that amount,
but no more. Although William and the company agree, after
the complainants acquired their lien, that these bonds and esti-
mates shall be computed at fifty cents to the dollar, yet this
agreement can have no such effect as to override the lien of the
complainants which had previously attached. The subsequent
agreement and settlement between William and Abner, whether
regarded as a purchase of these bonds, &c., or as the ratifica-
tion by William of the previous unauthorized act of Abner in
procuring a credit on the books of the company upon his indebt-
edness to the amount of them, cannot disturb the equities exist-
ing between the complainants and Abner at the time the bill was
served upon the latter, nor dispense with the application of the
rules of equity which define the rights of the parties. See this
case (15 Ala. 232,) and Wood v. McCain, (7 ib. 800.)

The surety is not to speculate upon his principal. If he com-
promise for less than the amount of the debt, he can recover no
more from his principal than he actually pays. And if he un-
dertakes the settlement of the debt, it is his duty to procure the
discharge of the debtor upon the best terms he can obtain it.—
Burge on Surety, 361; 14 Ves. Jr., 567; 2 Mylne & Cr. 361.
If he holds in his hands means in trust for the payment of the
claims for which he is liable, like all other trustees, he is not to
make profit by his trust. If by payments, he acquires a lien
upon the fund so deposited, he can take no advantage out of
such fund beyond the principal and interest which he has paid.
—Gordon v. Lewis, 2 Sumner's Cir. Ct. R. 143. To allow
Abner McGehee to retain of the amount due from him *double*
the amount he has paid out, upon the idea that bonds of the
company could have been purchased for half their nominal
amount, would be to violate the spirit of the above rules, and in
effect to *make* a contract between him and William to the preju-

dice of the complainants which had no existence when the bill was served upon him. We repeat, that according to the facts disclosed by this record, all that Abner McGehee could claim when this bill was served upon him on the 26th day of May, 1841, was to retain in his hands, as if he had collected it from the company, an amount equal to the sum he had paid of the debts named in the receipt to William McGehee.

The subsequent acquisition of the entire interest in these demands against the company by Abner from William, does not, as we have said, affect the equities existing between the complainants and the defendants at the time the bill was filed. Abner must look to the company for such *after acquired* interest.

The case made by the record, and the matters assigned for error, will not justify relief to the extent which the principles settled by this opinion would authorize, as the errors assigned by the complainants in the bill go alone to the allowance of the $1000 and $100 bonds as a credit to McGehee. The decree, then, as to said Abner McGehee, must be reversed and here rendered, charging him, in addition to the amount heretofore decreed against him, with the sum these two bonds were allowed to extinguish of his indebtedness to the company, and interest on that sum, to be computed after the expiration of sixty days from the service of the subpoena upon him. As to all other matters the decree is affirmed.

Let the complainants in the bill recover their cost.